FRANK H. CHAPPELL AND ANOTHER *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

New London Co., May T., 1892. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiffs' grantors, who owned a piece of land and a valuable wharf on a navigable river, conveyed to a railroad company by warranty deed a strip of the land for its track, the strip being twenty-five feet wide, and running through the land, separating the wharf from the land on the other side of the strip and rendering it inaccessible except by crossing the strip. The deed provided that the strip should be used only for a railroad, and contained the following further provision:—"Said company is to lay its track so that the top of the rail shall be on the general level of the ground of our wharf; and we reserve to ourselves the privilege of crossing and re-crossing said piece of land or any part thereof." The plaintiffs had succeeded to all the rights of the grantors in the land, and the court below found that the right of way across the strip was indispensable to the use of the wharf. The present defendants had succeeded to the rights of the original railroad company. Held—

1. That the right of way reserved was not of an easement in the grantors alone, which terminated with their lives, but was for the benefit of the owners of the wharf lot.

2. That the defendants had no right to raise their track so that the owners of the wharf property could not conveniently cross it.

3. That the provision in the deed that the railroad company should lay its track so that the top of the rail should be on a level with the wharf, bound the grantee and the present defendants, as in effect an agreement on the part of the grantee to maintain its track at substantially that level.

A reservation in a deed is to be regarded as an exception out of the grant, where it is clearly for the benefit of the principal estate, whoever may be its owner.

[Argued June 1st—decided September 12th, 1892.]

SUIT for an injunction against the raising of its track by the defendant railroad company, upon ground over which the plaintiffs claimed a right of way; brought to the Superior Court in New London County. Facts found and case reserved for advice.

*H. A. Hull,* for the plaintiff, contended that the right of crossing reserved by the deed of the Browns to the railroad

company, to whose rights the defendant had succeeded, was a permanent easement, not terminating with the lives of the grantors, but attached to the wharf property; that the "reservation" in the deed was to be construed as an "exception" out of the property conveyed; that the provision in the deed that the grantee should lay its track so that the top of the rail should be on a level with the wharf, became, by the acceptance of the deed, an obligation binding on the grantee; that this obligation ran with the title to the strip conveyed and was binding on the defendant; and that a permanent injunction should be granted restraining the defendant from raising its track in the manner which it proposed.

*R. Wheeler,* for the defendant.

1. The provision that "the company is to lay its track so that the top of the rail shall be on the general level of the ground," had a direct and important relation to the clause "and we reserve to ourselves the privilege of crossing and re-crossing the said piece of land above described or any part thereof within said bounds." It was a qualification or description of the right of crossing reserved and had no relation to any other provision or reservation in the deed; whatever. With it, it provides for a right of way at the then grade of the level of the land for the time being at least. This is the clear intent of the parties to be gathered from the language of the deed and is the legal intent as well, for the construction should be reasonable and the generality of words be restrained by the particular occasion. Rawle on Covenants for Title, § 298. The provision then, having reference to the reserved right of crossing alone, ended with that right. Without reference to that right and standing alone it would be of no advantage to the Browns, a useless restriction beneficial to no one, entitling no one to any damage for its breach and repugnant to the estate granted in the deed and the expressed purpose of the grant. Such a restriction is void. *Mitchell* v. *Leavitt*, 30 Conn., 587; 3 Washb. on Real Property, 374. Such repugnancy should

be avoided by restricting the application of the first clause to the reservation. *Lamp Chimney Co.* v. *Ansonia Brass & Copper Co.*, 91 U. S. R., 663. We suppose that this clause standing alone would not, upon strict interpretation, bind the assignee of the original grantee, as the assignee is not mentioned, and does not inure to the benefit of the present plaintiffs, as the covenant is not to the Browns, their heirs and assigns. There is no reversion of railroad plant upon abandonment. *Spencer's Case*, 1 Smith's Leading Cases, 7th Am. ed., 175; 1 Washb. Real Property, 437; Pierce on Railroads, 161.

2. We come then to the clause—" And we reserve to ourselves the privilege of crossing and re-crossing the said piece of land above described or any part thereof within said bounds," qualified as it is by the clause just discussed, which is incident to it, and we say that it is a good reservation of a right of way across the land conveyed to the company during the lives of the Browns; a life estate or interest in the land conveyed and terminating upon the death of Benjamin F. Brown in 1885. It is properly a reservation and not an exception. It reserves some new thing or right not existing before. 3 Washb. Real Property, 375; Washb. on Easements, 29; *Barnes* v. *Burt*, 38 Conn., 541; *Hurd* v. *Curtis*, 7 Met., 94; *Atwater* v. *Bodfish*, 11 Gray, 150. A reservation may be made in the premises of a deed as well as elsewhere. Boone on Real Property, § 303. The grantee even agrees to make the crossing a grade-crossing on a level with the ground, if such an agreement were necessary, as it is not, to give it the character of a reservation. *Ashcroft* v. *Eastern R. R. Co.*, 126 Mass., 196, 199. Reservations of rights of inheritance require the same or stronger words of limitation than direct grants, as the language is to be taken more strongly against the grantor. 3 Washb. Real Property, 343, 371; *Curtis* v. *Gardner*, 13 Met., 457; *Jamaica Pond Aqueduct Corp.* v. *Chandler*, 9 Allen, 170; *Ashcroft* v. *Eastern R. R. Co.*, 126 Mass., 199. It has not been doubted in Connecticut that the word "heirs" is necessary to make a fee in a grant. To create an estate of inheritance by deed

it is absolutely necessary to use that word, and no circumlo-
cution or inference or implication will supply the want of
it. 1 Swift Dig., 81, 226; *Curtis* v. *Gardner*, 13 Met., 457;
*Sedgwick* v. *Laflin*, 10 Allen, 430; 6 Am. & Eng. Encyclo-
pedia of Law, 876, and note. The reservation is to "*our-
selves*," without the word heirs, and it reserved an easement
in the land conveyed for the lives of the Browns. . It was
not in gross—a mere personal privilege. It was an estate
in the land. It was not a general reservation without any
word to determine the intent of the grantor, and which, it
might be argued, was thought of as merely appurtenant to
the remaining land. Such a reserved interest was of course
beneficial to the Browns as owners of the adjoining land,
but they might at any time release it to the railroad com-
pany. They might convey the land on each side to different
persons. The easement may be said, if we please, to be
appurtenant to the remaining land of the Browns, but that
does not and cannot be held to lengthen the term of the
reservation or to enlarge the estate. *Mitchell* v. *Leavitt*, 30
Conn., 589; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107
Mass., 290, 321; *Ashcroft* v. *Eastern R. R. Co.*, 126 id., 199.
This last case, indeed, seems to answer the several legal
questions here involved. There the grantor conveyed to a
railroad company a strip of land, and reserved, for the ben-
efit of the land still owned by him, a right of passing and
re-passing and maintaining some aqueduct logs to bring
him water from a spring. The language of the reservation
is "reserving to myself the right of passing and re-passing
and repairing my aqueduct logs forever, through a culvert
six feet wide and rising in height to the superstructure of
the railroad, to be built and kept in repair by said company."
The court held that the clause operated as a reservation or
by way of implied grant and not as an exception; that the
same rules of construction apply to the reservation or im-
plied grant as to an express grant; that the reservation gave
only an estate for life to the grantor; that to create an es-
tate of inheritance by deed to an individual the land must
be conveyed to the grantee and his heirs, and these neces-

sary words of limitation cannot be supplied by other words of perpetuity; and that, assuming that the easement reserved was appurtenant to the remaining land of the grantor, it would expire with his life, whether assigned or retained by him. No one in that case seems to have claimed that the company must go on maintaining the culvert after the right of using it had ended, though such a claim would have been as reasonable as a claim that the company here must keep the track at grade when the right of crossing had expired. This life interest of the Browns in the railroad land was conveyed to the Chappells by deed, either as appurtenant to the remaining land or directly as being all the interest the Browns had in the land conveyed to the company, as that land was included within the boundaries given in that deed. *Rogers* v. *Moore*, 11 Conn., 553. The right of crossing so conveyed to the Chappells expired in 1885, at the death of Benjamin F. Brown. They can have acquired no right by user since that date. Till then they and their grantees exercised and enjoyed their rights under the reservations in the deeds and in strict agreement with them. The company could at no time interfere and was guilty of no laches. It had no knowledge of any claim on the part of the Chappells other than of their legal rights under the deed. It has enjoyed the property as fully as it required for all the purposes of a railroad during all the time. Trespassing since 1885 upon the railroad property or making use of a necessary way across the railroad has gained them no right. The deeds are no evidence of adverse user, but the reverse. *Hoyle* v. *N. York & N. Eng. R. R. Co.*, 60 Conn., 28. It may be admitted without detriment to the defendant that the plaintiffs may have a way of necessity. Such a way however is subordinate to the necessary use of the land for railroad purposes. The plaintiffs must exercise such right of way consistently with the deeds of the company and with the purposes of the grant to the company. They must confine their way to a single crossing and raise the approaches. They can so enjoy the way without any very great inconvenience. The raising of the track is not

an invasion of any right and entitles the plaintiffs to no damage. *Seeley* v. *Bishop*, 19 Conn., 128 ; *N. York & N. Eng. R. R. Co.* v. *Comstock*, 60 id., 208 ; Pierce on Railroads, 132, 134, 159 ; Washb. on Easements, 43.

TORRANCE, J.   In 1851 John W. and Benjamin F. Brown owned a piece of land in New London fronting on the river Thames and lying between that river and Bank street.   On the river front was a wharf and docks, and between the wharf and Bank street was about an acre and a half of land used by the Browns in carrying on a coal and wharfage business.   The wharf was then very valuable, but less so than at present, because of added improvements.   In June of that year the Browns conveyed, for railroad purposes, to the New Haven & New London Railroad Company, a strip of this land, twenty-five feet wide, running through the land and separating the wharf from the land lying westerly of the strip conveyed, and rendering it inaccessible except by crossing the strip.   This right of crossing was indispensable to the Browns and all who might own the premises then owned by them.

This strip of land was conveyed by a warranty deed, which provided, among other things, that it should be used for the purposes of a railroad, " and for no other use and purpose whatever."   It further provided as follows :—" And the said company is to lay their track so that the top of the rail shall be on the general level of the ground of our wharf." * * * " And we reserve to ourselves the privilege of crossing and re-crossing said piece of land described, or any part thereof within said bounds." * * * " And said railroad company shall secure our water-pipes from all harm or damage where they cross said described land, and shall so arrange them that they may be attended to at any and all proper times when necessary for repairs or laying down anew."

The defendant is the successor of the grantee in the deed and entitled to all the rights under the same which the grantee had thereunder.   The plaintiffs now own the prem-

ises formerly owned by the Browns, and, it is found, are entitled to all the rights in the strip conveyed " which attached to said lands belonging to said Browns " after giving the deed aforesaid, or which said Browns " saved or reserved " in said deed " or which attached as conditions to the estate granted under said deed and which were not terminated upon the deaths of said Browns."

John W. Brown died in 1879 and Benjamin F. Brown died in 1885. One of the plaintiffs and his successive cotenants and partners have owned and occupied the Brown premises and have carried on a very extensive business there as coal dealers and wharfingers since 1871, when the premises were purchased from one of the Browns, who had then become the sole owner thereof. The plaintiffs have openly and continuously, and under claim of right and without hindrance or objection, since 1871 exercised all the rights excepted or reserved in the deed of 1851 in favor of the grantors therein. They have crossed the strip of land conveyed at any and all times, and at any point and for all purposes. The amount of coal alone carted across annually is about twenty thousand tons. They have also laid new water-pipes across the strip and repaired the old ones when necessary. Since 1871 the docks and lands of the plaintiffs and the tracks of the defendant have remained at the same general level with each other, but the defendant since that time has had no occasion until recently to raise its tracks at this point, but by reason of improvements and changes near this point this has now become necessary. The strip has been at all times used as a railroad bed. The defendant and its predecessor had no knowledge of any claim of rights over or in the strip, on the part of the Browns or their assigns, except such as was inferable from their use of the strip and from the record of the deeds.

The defendant now proposes and threatens to raise its track over the strip about three and one half feet at the south line of the plaintiffs' land and about two and one half feet at the north line, and it is found that " when so raised it will be impossible for the plaintiffs to cross said track

with teams, without constructing approaches, which will occupy and render useless a part of the dock, and the gravel and material used in constructing said track and road-bed can only be retained within said locus and prevented from running on to the plaintiffs' said land and dock, by a retaining wall, which will greatly increase the burden of lateral support by the plaintiffs' dock, outside of said locus, there being but twelve feet from said retaining wall to the edge of the wharf at one point."

Since 1871 the plaintiffs have expended about seventy-five thousand dollars in improving their docks in walls, filling coal bins and coal pockets, which it is found " will be cut off from access if the plaintiffs have no right of way across said locus, and which will be greatly depreciated in value if said track is changed and maintained at the proposed new grade, unless the plaintiffs at large expense raise the general level of the land and docks, and extend the docks into the river." The plaintiffs have also expended about fifteen thousand dollars on the land west of the docks, to fit it for use in connection with the docks. If the track should be raised as proposed and threatened, the plaintiffs could only with great difficulty repair or lay water-pipes across the strip.

These in substance are the facts found, and upon them two questions are reserved for the advice of this court, namely—1. Whether the defendant has the legal right to raise its track and road-bed as proposed within said locus. 2. Whether such raising of the track and road-bed is an illegal disturbance of any of the plaintiffs' rights, and if so of what rights.

The controversy between the parties relates chiefly to the right of way across the railroad. The defendant contends that such right of way was, at most, one during the life of the survivor of the Browns, and not to them and their heirs and assigns.

This claim is founded on the well-settled rule of the common law that to create an estate of inheritance in land by deed to an individual, it is absolutely necessary, with some

few and well-settled exceptions, within which it is claimed the present case does not come, to use the word "heirs," and that "no circumlocution or other words will supply the place of that word." 1 Swift's Digest, top p. 77; Challis on Real Prop., 170. This rule, it is true, "has obviously become a mere arbitrary rule, still, unless changed by statute, it is as imperative as a rule of law as ever." 1 Washburn's Real Prop., chap. 2, par. 53. In England and many of our states the rule has been so changed, but not in our own state.

This rule has been applied quite generally to "exceptions" and "reservations," so called, in deeds, as well as to "grants" of land or of interests therein, express or implied, to which it is more properly applicable. It is not applicable, and has never been properly applied, to an "exception" in the correct sense of the term, as will be shown hereafter; but the distinction between an "exception" and a "reservation" is frequently quite obscure and uncertain and has not always been observed.

As the technical words of limitation were not used in "reserving" the right of way to the Browns, the defendant contends that the easement did not extend beyond the life of the survivor of them. We think this claim is not well founded.

If, in construing the "reservation" in question, we lay out of view the technical rule above mentioned, it is difficult to believe that the parties to the deed intended that the right to cross was only to exist during the lives of the grantors. The situation and needs of the grantors' premises seem to forbid such a belief. The way at the date of the deed was an existing one, plainly visible, and necessary, and in almost constant use. The right to continue to use it was an almost absolute necessity, not only to the grantors, but to all subsequent owners of the premises. Without it the wharf would be practically worthless, and the value of the other land would be greatly diminished. Then again, if the deed had been silent as to the right to cross, the law would have given an adequate "way of necessity" in favor

of the owners of the premises. *Collins* v. *Prentice,* 15 Conn., 39; *Myers* v. *Dunn,* 49 id., 71. In the absence of any relinquishment of such a way of necessity in the deed, it is hard to believe that the parties intended, by an express reservation, made under these circumstances, to give to the grantors or allow them to retain a less extensive right than the law would have given if nothing had been said in the deed about the right to cross.

Then too the right to cross was, in a certain sense, a right existing in the grantors at the date of the deed. It was a part of their full dominion over the strip about to be conveyed by the deed, and not a right to be, in effect, conferred upon them by the grantees. It was something which the "reservation" in effect "excepted" out of the operation of the grant.

Hence it is quite reasonable to conclude that the stipulation as to the right of way was intended by both parties to give a right not temporary and personal, but permanent, and for the benefit not so much of the Browns as of the premises they continued to hold. In such cases we think the rule is well settled that a permanent easement in favor of the retained land may be made without words of limitation.

The rule in question has been thus stated:—" In respect to whether a reservation is of a perpetual interest like a fee in the easement reserved, the question seems to turn upon whether it is a personal right, an easement in gross, or one for the benefit of the principal estate, whoever may be its owner. In the latter case it is held to be a permanent right, appurtenant to the principal estate in the hands of successors and assigns without words of limitation." Washburn on Easements, 4th ed., chap. 1., sec. 5, par. 2. The question whether the easement is "for the benefit of the principal estate, whoever may be its owner," is to be determined from the intent of the parties as gathered from the language employed to express it, read in the light of the surrounding circumstances.

The rule above mentioned has, we think, been recognized

and acted upon by this court. It was recognized in the case of *Kennedy* v. *Scovil*, 12 Conn., 326. In that case the deed contained the words "always provided that this deed is given on condition that the grantors are to have and retain the privilege of conveying water from said dam similar to the one now in use," etc., without words of limitation. The language of the court is—" What did the parties intend by the reservation in question? And for the purpose of ascertaining the intention it is proper to take into consideration the condition of the property and the circumstances of the parties in relation thereto. * * * The objection is that the use is reserved to them without naming heirs and assigns. * * * It is true that the right is reserved to them without words of inheritance and without naming their assigns. But it becomes material to enquire for *what purpose the reservation was made.* It was ' for the necessary accommodation and use of the old shop.' Of this they were the owners in fee simple; and can it be supposed that they meant to limit the use of the water without which the establishment was of no value to their own personal occupancy? And can it be believed that such was the intention of the parties to this deed? The idea is opposed to every presumption and to all probability. Are we then prevented by any rigid rule of construction from giving effect to the intention of the parties? We know of none, and we think this part of the case entirely free from doubt."

. This rule was applied in the case of *Randall* v. *Latham*, 36 Conn., 48. The deed in that case contained this clause: —" Reserving and excepting the following privileges; to wit;—the privilege of the right of way in common with said grantee in the land; * * * and also the said grantor is to have the privilege of drawing the water from the ditch of said Latham's grist mill at all times * * * for the accommodation of the factory below said Latham's mill." The point was distinctly made that the stipulation as to water was a bare license to the grantor so long as he continued to own the mill. But the court held that it was an easement permanently attached to the factory, which passed to the

assigns of the grantor. The court on this point said:—
" But it is said the agreement was only a license to Thomas
(the grantor) to draw the water for so long a time as he
should own the mill below. This claim is in conflict with
all the facts of the case. The right to the water is reserved
without limitation as to time. It was made for the ben-
efit of the mill below and manifestly was designed to be
appurtenant to it. It would not only be beneficial so long
as Thomas should own the mill, but would enhance its value
to some extent when sold." .

In *Mather* v. *Chapman*, 40 Conn., 382, 401, the "reserva-
tion" was without words of limitation. It is true the ob-
jection was not taken there, but both court and counsel
seem to proceed on the theory that they were not necessary
under the circumstances. So too in *Myers* v. *Dunn*, 49
Conn., 71, the "reservation" of a way contained no proper
technical words of limitation, but the effect of the decision
is to sustain the rule in question.

The rule has been applied in other states, as may be seen,
by reference to the following decisions:—*Borst* v. *Empie*,
1 Selden, 33; *Mendall* v. *Delano*, 7 Met., 176; *Dyer* v. *San-
ford*, 9 id., 395; *Bowen* v. *Conners*, 6 Cush., 132; *Smith* v.
*Higbee*, 12 Verm., 113; *Karmuller* v. *Krotz*, 18 Iowa, 352.
In this last case, it is true, technical words of limitation
were by statute made unnecessary; nevertheless it is an
authority for the rule that where an easement is manifestly
intended "for the benefit of the principal estate, whoever
may be its owner," it will be held to be a permanent ease-
ment rather than a personal one.

The rule in question therefore seems to be sustained by
authority, and we think it is founded in reason and good
sense. The truth is that in adopting and applying this rule
courts have frequently in effect treated such "reservations"
as if they had been "exceptions" in the proper sense of
the word. The words "reserve" and "reserving," and
"except" and "excepting," in deeds, are often used inter-
changeably, and it is not always easy to determine which
was intended except by a reference to the subject matter

and surrounding circumstances. *Barnes* v. *Burt*, 38 Conn., 542. " The operation of an exception in a deed is to retain in the grantor some portion of his former estate which by the exception is excluded from the grant; and whatever is thus excluded remains in him as of his former right or title, because it is not granted." *Ashcraft* v. *Eastern R. R. Co.*, 126 Mass., 196. If this is a correct statement of the effect of an "exception" proper, and we think it is, it follows that no words of limitation are necessary in such cases.

A way or right of way "reserved" has often been treated in effect as if it had been "excepted" out of the grant, and on principle we see no reason why this may not be done in cases like the present to effectuate the plainly manifested intent of the parties. In the following cases "ways" or "rights of way" were "reserved" in deeds without words of limitation, and yet the courts expressly treat them as "exceptions" proper. *Inhab. of Winthrop* v. *Fairbanks*, 41 Maine, 307; *Smith* v. *Ladd*, id., 314; *Bowen* v. *Conners*, 6 Cush., 132. In *White* v. *Crawford*, 10 Mass., 183, the court was prepared to so hold if necessary to carry out the intent of the parties. In *Bowen* v. *Conners*, SHAW, C. J., says:—" Upon principle it appears to us that this right plainly intended to be secured to the plaintiffs, can legally be secured in the manner adopted in this deed, treating the right reserved as an exception." We think the case at bar comes within the rule and that the right to cross, "reserved " in the deed here in question, was a permanent one in favor of the land and premises retained by the Browns, and that it passed to the plaintiffs and is now owned by them.

We think this is also true in effect of the easement for water pipes across the strip of land conveyed. The defendant relies upon the case of *Ashcraft* v. *Eastern R. R. Co.*, *supra*, as decisive of the present case in its favor; but we cannot take this view of the matter. That case differs materially from the present in some important respects. The language of the deed was as follows:—" Reserving to myself the right of passing and re-passing, and repairing my

aqueduct logs, forever, through a culvert six feet wide and rising in height to the superstructure of the railroad, to be built and kept in repair by said company." In the first place, so far as appears in the case as reported, there was here no " way " or " right " of necessity remaining to the grantor if nothing had been " reserved " in the deed. In the next place the rights " reserved," being through a culvert to be built and maintained in the future by the grantee, had no existence, properly speaking, prior to the delivery of the deed, and so could not possibly be " excepted " or created by " exception " or be treated as retained by " exception," and this is the essential distinction between that case and the one at bar. The " reservation " was in truth and effect a " grant " of new rights to the grantor from the grantee, and so it could not be treated as an exception. The court puts the case on this ground and expressly says :—" We are of opinion that this clause must operate as a reservation or by way of implied grant. * * * The clause we are consid- ering does not merely reserve to Lovejoy a right of way and of maintaining aqueduct logs through the land granted. The privilege which the parties intended to vest in him was the right of passing and re-passing and of maintaining his aqueduct logs *through a culvert to be built and kept in repair by the grantee.* The provision that the grantee shall build and keep in repair the culvert is an essential part of the grant, and clearly indicates that the intention of the parties was to confer upon the grantor a new right, not previously vested in him, and which therefore could not be the subject of an exception." In such a case the rule of common law requiring words of limitation to extend the easement be- yond the life of the grantor may well be applied without conflicting with the present decision.

We are also of the opinion that the stipulation in the deed that "the said company is to lay their track so that the top of the rail shall be on the general level of the ground of our wharf," has reference to the reserved right of cross- ing, and provides for a right of way at the then grade of the level of the land so long as the right of way shall exist.

It is in effect an agreement to maintain the track substantially at the then level of the ground, and binds the defendant.

The Superior Court is therefore advised that the defendant has no legal right to raise its track and road-bed within said *locus in quo* as proposed.

This renders a specific answer to the second question unnecessary.

In this opinion the other judges concurred.