JOHN D. ANTONOPULOS, Appellant, *v.* THE POSTAL TELEGRAPH CABLE COMPANY, Respondent.

Second Department, March 31, 1941.

*Frederick E. Crane* [*Harry Yodowitz* with him on the brief], for the appellant.

*John Bright*, for the respondent.

CARSWELL, J.   Plaintiff seeks to compel defendant to remove its telegraph poles from his farm in Salisbury Mills, Orange county. The property abuts Blaggs Clove road, which runs generally north and south, and plaintiff's title extends to the center of the road. He bought the farm in 1928 from Charles F. Bedell.   The latter had previously added to the south side of his original farm a small parcel that he acquired from Henry C. Strong.   There were mesne conveyances of the entire farm to others and a reconveyance to plaintiff in 1934.   The situation, therefore, is as if plaintiff had continuous ownership from 1928.

When the property was conveyed by Bedell in 1928 there was a line of forty-two telegraph poles, with cross-arms and wires, on the property.   All the poles except seven were set between the fence line and the traveled portion of the highway.   The line beginning at the north boundary of the farm had eleven poles to a point just short of the farm buildings; the line then left the road and for a space covered by seven poles was carried in a semi-circle to the rear of the farm buildings and back to the road, where eighteen poles carried the line to the north boundary of the former Strong parcel, along the front of which the line was carried by six poles. There were no poles in front of the buildings.

To justify the maintenance of these poles on plaintiff's property the  defendant  invokes  purported  grants  by  two  of  plaintiff's predecessors in title.   One dated October 5, 1899, signed by Henry C. Strong relates to the six poles at the south end of the farm.   The other, dated July 14, 1908, signed by Charles F. Bedell, plaintiff's grantor, relates to the seven poles which encircled the rear of the buildings.

The Strong grant, which concerns the group of six poles, has been properly held to be valid.   (*Rochester Poster Advertising Co.,*

*Inc.,* v. *Smithers,* 224 App. Div. 435; *Barber* v. *Hudson River Telephone Co.,* 105 id. 154.)

The Bedell grant has been held to give an easement by implication in respect of the twenty-nine poles on either side of the seven poles mentioned therein.

The crucial grant, therefore, is the one from Bedell. Its language is clear and when read literally gives rights with respect to seven poles and no more. Assuming, however, that its meaning is uncertain, we may consider the surrounding circumstances and the situation of the parties when it was executed, in order to discover its true intent, which latter must be given effect. (*Herman* v. *Roberts,* 119 N. Y. 37, 42; *Matter of One Hundred and Sixteenth St.,* 1 App. Div. 436, 444; *Matter of City of New York [West 177th Street],* 135 id. 520, 524.)

In 1886 the predecessor statute of section 261 of the Real Property Law was enacted. It provided, in substance, as does section 261, that whenever a wire or cable used by a telegraph company is or shall be attached to, or shall extend upon or over any building or land, no lapse of time shall raise a presumption of any grant or justify a prescription of any perpetual right to such attachment or extension.

When Bedell owned this farm, the telegraph poles were in place, without permission, or they were there as a matter of mere parol license, except as to the six poles involved in the Strong grant. At that time the above statute was in effect. Its meaning and scope were determined in September, 1901, in *Andrews* v. *Delhi & Stamford Tel. Co.* (36 Misc. 23; affd., 66 App. Div. 616). There Andrews owned a farm and land to the center of a road. It was held that proof of the defendant company's peaceable possession and maintenance of its telephone line along a country highway for more than twenty years did not raise a presumption of grant or prescription of perpetual right. It was further held that a parol permission or license was revocable at will and if there had been a parol permission or license, it was revoked when the then owner received his deed from his grantor.

It thus appears that before Bedell signed the July 14, 1908, grant to defendant's predecessor, it had no irrevocable right to maintain thirty-six of the poles on Bedell's property. This lack of right was confirmed in 1938 in *O'Meara* v. *Postal Telegraph-Cable Co.* (279 N. Y. 282). There the *Andrews* doctrine (*supra*) was reiterated and the case cited with approval.

With this state of the law as it existed in 1908 in mind, we may examine the paper, the scope of which is in dispute. The printed

blank form used read: " Received of   *   *   *   Company   *   *   *
Dollars, in consideration of which I hereby grant unto said Com-
pany, its successors and assigns the right to erect and maintain
*its* poles and lines over [and along] my property [including the
necessary poles,] fixtures, guys and braces, [and in full satisfaction
for the trimming of any trees along said lines necessary to keep
the wires cleared at least eighteen inches]." The incident which
resulted in the execution and delivery of the Bedell document
occurred when defendant's predecessor was about to trim the trees
in front of Bedell's house. He objected and an arrangement was
made to take the seven poles from in front of the house and encircle
the back of the buildings with them. It does not appear whether
or not Bedell knew he could require all of the forty-two poles to be
taken off his property except the six involved in the Strong grant
and particularly the seven poles which obstructed the front of his
house. He nevertheless agreed to a relocation of the seven poles
in the manner stated.

When it came to filling in the above printed blank or form,
the word " its " italicized above was struck out and, in hand-
writing other than that of Bedell, the word " seven " was inserted
above that word. Words of significance, relating to poles and lines
" along my property " (indicated by brackets above), were also
obliterated. These obliterated words necessarily referred to the
twenty-nine poles as they were " along my property." There
was then added in script: " The above Right of way refers to
seven Poles with cross arms which were removed from front to
back of my house at my request and are located on Private Prop-
erty between the Highway on the East and the Highway on the
west side of my house, with privilege to trim all trees between
said points necessary to keep wires clear."

In view of the manner of adapting the blank form to the arrange-
ment between Bedell and the representative of the defendant's
predecessor, may it be said that either intended to create any
rights in the defendant's predecessor in respect of any poles other
than the seven mentioned?

If we read the printed blank or form before it was filled in, it
is readily apparent that by failing to strike out the word " its "
and failing to insert the word " seven " in place thereof, the right
to maintain all the poles on the property would have been effect-
ually authorized by the document in connection with the matter
added in script, with its reference to the removal of the seven poles
from the front of the Bedell house to the rear thereof. If Bedell
intended to give and defendant's predecessor understood that it

was to get additional rights in respect of other than the seven poles, the word " its " would have been left undisturbed in the printed form. This is so apart from the significant words (bracketed above) which were struck out.

This analysis discovers affirmative acts of the parties indicating that they did not intend to create expressly or by implication any rights in the defendant in respect of the twenty-nine poles on either side of the group of seven poles, which twenty-nine poles were in place at best under a mere license, subject to revocation at will. The instrument reveals that the intent of the parties was merely to grant rights in respect of seven poles.

Defendant, however, despite the foregoing, insists that when its predecessor got this Bedell document it acquired an easement by implication to maintain the twenty-nine other poles on either side of the group of seven poles mentioned; that this arose of necessity because the right to maintain the seven poles without the right to maintain the twenty-nine other poles would be valueless.

An easement of necessity may only arise as a consequence of and in accord with the presumed intention of the parties. Here we have an affirmatively evidenced intention which is contrary to the claimed presumed intention essential to sustain an easement by necessity. The existence of this documented affirmative intention precludes the invoking of a contrary presumed intention, as it is the true and actual intent of the parties, so far as it is evidenced, which must prevail.

There seems to be no reported case where an easement has been implied from an easement of this kind. This is significant. That which has never been declared to be the law is usually not the law, particularly in the ancient and often worked over field of real property law. The true nature of the Bedell grant, and the attributes of its so-called easement may shed light upon whether a further so-called easement may be implied from it.

An easement is a form of servitude. Its conventional or common-law meaning is that it is a right or privilege which one parcel of land yields up to another parcel of land as an easement appurtenant. It contemplates the existence of a dominant estate and a servient estate. It is an incorporeal hereditament which issues from a corporeal estate for the benefit of another estate. It is a burden imposed on corporeal property and not upon the owner thereof. It is in the nature of an estate and is an appurtenance to an estate. (17 Am. Jur., Easements, § 10; 1 Reeves, Real Property, § 126.)

The Bedell document, therefore, is not a grant of a true easement. The right given by it is personal to the telegraph company,

which does not possess a dominant estate having the conventional relationship to a servient estate. The right under it is in the nature of an easement, but as it is not appurtenant to a dominant estate, the right is of a character that has become known as an easement in gross. The latter is for the personal benefit of the grantee and is not an incident of or concerned with a dominant estate. Such a right or easement in gross exists where there is only a servient estate and the privilege given to the grantee attaches to the person and not to any land. (17 Am. Jur., Easements, § 12; 1 Weed, New York Real Property, [3d ed.] p. 609; 1 Reeves, Real Property, p. 155 *et seq.*) With the true nature and personal character of the rights arising under the Bedell grant in mind, it is difficult to conceive of a just basis for added rights by implication. This is especially so when it is recalled that at one time an easement in gross was so narrowly construed and was deemed so personal as to the grantee that it was not assignable. (*Ackroyd* v. *Smith,* 10 C. B. 164; 138 Eng. Reprint, 68; Washburn's Easements and Servitudes, [4th ed.] p. 11; 1 Weed, New York Real Property, [3d ed.] p. 609.) Later, although courts do not favor by construction an easement in gross (1 Weed, New York Real Property, [3d ed.] p. 609; *Wilson* v. *Ford,* 209 N. Y. 186), it was recognized as transferable and inheritable.

We conclude that added rights respecting the twenty-nine poles were not granted by implication when the easement in gross relating to the seven poles was expressed with particularity in the instrument.

The defendant, therefore, had no legal right to maintain the twenty-nine poles after plaintiff acquired the property from Bedell. That conveyance revoked its license. (*Panama Realty Co.* v. *City of New York,* 158 App. Div. 726.)

These views do not place the defendant in an impossible situation. It may obtain a legal right to maintain the twenty-nine poles by recourse to section 27 of the Transportation Corporations Law.

The judgment dismissing the complaint on the merits should be reversed on the law and the facts, with costs, and judgment should be directed for the plaintiff in respect of the twenty-nine poles, with costs.

Findings of fact and conclusions of law inconsistent herewith should be reversed and new findings made. A stay of execution should be granted for sixty days pending the institution of a proceeding in condemnation by the defendant, if it be so advised.

LAZANSKY, P. J., HAGARTY, JOHNSTON and ADEL, JJ., concur.

Judgment reversed on the law and the facts, with costs, and judgment directed for plaintiff in respect of the twenty-nine poles, with costs.

Findings of fact and conclusions of law inconsistent herewith are reversed and new findings will be made. A stay of execution for sixty days is granted pending the institution of a proceeding in condemnation by the defendant, if it be so advised.

Settle order on notice.