MILDRED M. BROWN *v.* CONNECTICUT LIGHT AND POWER COMPANY ET AL.

BALDWIN, DALY, KING, MURPHY and MELLITZ, Js.

Argued April 1—decided May 13, 1958

*Morgan P. Ames,* with whom were *Francis J. Mc-Namara, Jr.,* and, on the brief, *Raymond T. Benedict* and *John F. Spindler,* for the appellant (plaintiff).

*Walter F. Torrance, Jr.,* for the appellees (named defendant et al.).

KING, J. The plaintiff, as the owner of property on the easterly side of Round Hill Road in Green-

wich, seeks injunctive relief against, and damages for, the violation of a claimed covenant in an agreement. By the agreement, a prior owner of the property granted an easement for the installation of a subway or underground conduit for the accommodation of electric wires and cables.

The agreement was entered into on June 7, 1915, by and between I. N. Phelps Stokes and his wife, Edith M. Phelps Stokes, "party [sic] of the first part," and the United Electric Light and Water Company, hereinafter referred to as the lighting company, the Western Union Telegraph Company, hereinafter referred to as the telegraph company, and the New York Telephone Company, hereinafter referred to as the telephone company, as the parties of the second part. At the time, Mr. Stokes was the sole owner of what is now the plaintiff's property. He predeceased his wife, who succeeded to his ownership. Both died sometime prior to September 12, 1944, on which date Mrs. Stokes's executors conveyed to the plaintiff the main portion of the property, which alone is material to the issues in this case. The defendant Connecticut Light and Power Company, hereinafter referred to as the defendant, is the successor, by corporate merger consummated August 3, 1917, to the lighting company.

Prior to December 20, 1906, the telegraph company desired to erect and maintain a telegraph line, consisting of poles, wires, cables and other incidental equipment, in front of the premises then owned by Mr. Stokes. On December 20, 1906, an agreement was entered into with him, Mrs. Stokes joining as his wife, for the erection of a line of twenty-five open wires and two aerial cables in front of the property. Subsequently, whether with the permission of the Stokeses does not appear, the telephone company

used the telegraph company's poles in front of the property for its telephone line. Sometime thereafter, the lighting company wished to make use of the same poles for its power line, but permission so to do was refused by Mr. Stokes.

Thereafter, on June 7, 1915, the agreement involved in this case was executed. In the preamble it was recited that the telegraph company maintained poles and overhead wires pursuant to the 1906 agreement; that the telephone company maintained an aerial cable on the poles under an agreement with the telegraph company; that the lighting company was desirous also of using the poles for its power line; and that the Stokeses wished to have the poles and wires in front of the property removed.

The plaintiff seeks to have added to the finding a large number of paragraphs of the draft finding on the ground that the facts stated in them were admitted or undisputed facts. To secure an addition on this ground, it is necessary for an appellant to point to some part of the appendix, the pleadings, or an exhibit properly before us, which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed. Maltbie, Conn. App. Proc., § 158. That a fact was testified to and not directly contradicted by another witness is wholly insufficient. Ibid.; Practice Book § 397. The trier is the judge of the credibility of witnesses. *Banks* v. *Adelman,* 144 Conn. 176, 179, 128 A.2d 534, and cases cited therein. A further requirement for such an addition to the finding is that the particular portion of the appendix, pleadings or exhibit, as the case may be, relied upon as requiring the addition, be pointed out in the appellant's brief. Maltbie, op. cit., § 328. The plaintiff has failed to show that she is entitled to any of the

additions sought which are material to the case. Nor are any of the paragraphs of the finding which the plaintiff seeks to eliminate, on the ground that they were found without evidence, of materiality.

The plaintiff offered in evidence a letter dated May 20, 1919, from the telegraph company to the lighting company, complaining that although the latter company had agreed, by the instrument of June 7, 1915, to place its facilities in the conduit, it had not removed the wires "which we permitted you to place on our poles [in front of the Stokes property] as temporary attachments," and that the removal of the poles in "fulfillment of our obligations under the contract" had thereby been blocked. The letter was claimed on two grounds: first, that it showed that the lighting company had failed to carry out its claimed agreement to put its wires underground, and secondly, that it showed the interpretation by the telegraph company of the terms of the agreement. The first ground was on its face without merit since there is no issue as to any violation of any agreement during the lifetime of the Stokeses. The court excluded the letter on the ground that the telegraph company was not a party to this suit and that its letter was not an admission binding on the defendant. On the foundation as laid, the letter was a statement out of court by one not a party to this action, offered to affect the defendant, not itself a party to the contract. Whether the letter would have been admissible on some different ground or with some further foundation is a question not presented to, nor ruled upon by, the trial court, and therefore we do not consider it. *Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 210, 140 A.2d 708. The ruling was not erroneous.

Prior to trial, the plaintiff filed in court a notice

to the defendant to produce an order of the public utilities commission promulgating certain rules governing the defendant in trimming trees where it maintained overhead wires in Greenwich. At the trial, the defendant did not have either the original order or a copy of it in court, and the plaintiff asked the court to direct the defendant to produce its copy of the order. This the court refused to do. An order to produce can be entered by the court in the course of a trial as to any document then in court and in the possession of the party against whom the order to produce is entered, in accordance with the procedure described in *Banks* v. *Connecticut Ry. & Lighting Co.,* 79 Conn. 116, 119, 64 A. 14. Since neither the original order nor the defendant's copy of it was in court, an order to produce would have been wholly improper. For any document in the possession of the defendant and not actually in court, the plaintiff should have issued a subpoena duces tecum. Ibid.; *Hurley* v. *Connecticut Co.,* 118 Conn. 276, 284, 172 A. 86. Furthermore, in this particular situation the plaintiff could have procured a certified copy of the order, if in fact there ever was such an order, from the public utilities commission and, if it was relevant, asked to have it judicially noticed by the court under the rule of *Roden* v. *Connecticut Co.,* 113 Conn. 408, 415, 155 A. 721, and *Nichols* v. *Nichols,* 126 Conn. 614, 620, 13 A.2d 591. No reason appears for the unusual procedure followed by the plaintiff, especially since the original order would be in the hands of the public utilities commission, not in the hands of the defendant. *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 234, 188 A. 433. There was no error in the court's refusal to enter an order to produce.

The plaintiff then offered a clipping from "The

New York Times" purporting to set forth the substance of the order. Since there was no proper attempt to obtain the best evidence of the order, which in this case would have been either the original order or a duly certified copy of it, there was no right to introduce secondary evidence of any sort in proof of it. *City Bank* v. *Thorp,* 78 Conn. 211, 218, 61 A. 428; *Woicicky* v. *Anderson,* 95 Conn. 534, 536, 111 A. 896; *State* v. *Jones,* 132 Conn. 682, 683, 47 A.2d 185. The court's exclusion of the newspaper clipping was correct. In saying this, we do not wish to be understood as in any way implying that the clipping would have constituted proper secondary evidence had secondary evidence been admissible. See cases such as *Hartford* v. *Maslen,* 76 Conn. 599, 616, 57 A. 740; *Russo* v. *Metropolitan Life Ins. Co.,* 125 Conn. 132, 139, 3 A.2d 844; *Cameron* v. *Peck,* 37 Conn. 555, 557; *In the Matter of Johnson's Will,* 40 Conn. 587, 589. No such question is before us.

While the claims of counsel took a wide range, the fundamental claim of the plaintiff is that she, as a successor in title to that portion of the Stokes property along which most of the subway or conduit was laid, can enforce a covenant or obligation, claimed to have been made by the predecessor of the defendant, not to erect or maintain poles or wires in front of the Stokes property.

The instrument itself refers to the basic right granted, which was the right to construct and maintain the subway, with lines and cables, as an easement. This nomenclature was correct. *McPheters* v. *Loomis,* 125 Conn. 526, 530, 7 A.2d 437; *Arborio* v. *Hartford Electric Light Co.,* 130 Conn. 592, 597, 36 A.2d 384; *Antonopulos* v. *Postal Telegraph Cable Co.,* 261 App. Div. 564, 568, 26 N.Y.S.2d 403, aff'd, 287 N.Y. 712, 39 N.E.2d 931. Whether or not the

easement imposes a perpetual burden on the Stokes property is not the question involved in this case. No attempt is being made to deprive the defendant of any rights granted in the basic easement. Rather, this is an attempt by a successor in title of the grantors of the easement to enforce against the defendant, as successor to the lighting company, a covenant claimed to have been made by the three utility corporations, of which the lighting company was one.

The meaning and effect of the agreement, including the claimed covenant, "are to be determined, not by the actual intent of the parties [as a state of mind], but by the intent expressed in the . . . [instrument], considering all its relevant provisions and reading it in the light of the surrounding circumstances." *Taylor* v. *Dennehy,* 136 Conn. 398, 402, 71 A.2d 596. The preamble of the instrument recites that "the party of the first part desires to have the poles, wires and cables along a certain portion of Round Hill Road, abutting his property, removed." The instrument provided that it was to supersede the 1906 agreement with the telegraph company and that the "subway is, and shall remain, the joint property of the parties of the second part, their successors and assigns." The granting clause conveyed to the parties of the second part "the permanent and perpetual right and easement to construct, operate and maintain a line of underground conduits, with necessary appurtenances for the carrying on of the Lighting, Telegraph and Telephone businesses, along the east side of Round Hill Road" between two designated points. It was further provided that upon completion of the subway the telephone company "agrees to remove its cable," and the telegraph company "agrees to remove its wires, cable, crossarms and poles," along the Stokes property. It is the lat-

ter language which the plaintiff claims constitutes a covenant that no overhead wires will be erected or maintained and which she seeks to enforce against the defendant. It is to be noted that the agreement does not provide for the lighting company to remove any poles or wires. The final provision was: "Any of the parties of the second part to this agreement may terminate its interest in this subway by giving each of the other parties thereto sixty (60) days' notice, in writing, and removing from the subway its cables and equipment, and upon such removal the subway shall then become the property of the remaining parties, or party, of the second part."

It will be noticed that words of inheritance or succession occur only in one place, namely, in the provision that the subway was to be the joint property of the grantees and their successors and assigns. This is fully consistent with the provision that the basic easement granted was to be "permanent and perpetual." But it also gives added significance to the failure to use words of inheritance or succession in any other part of the entire instrument, and especially in connection with the claimed covenant in favor of the Stokeses.

The absence of words of inheritance, while not conclusive, is indicative that only a personal right in the Stokeses was intended and "must control unless a contrary intent appears when the words are read in the light of related provisions of the . . . [instrument] and the surrounding circumstances." *Taylor* v. *Dennehy,* 136 Conn. 398, 402, 71 A.2d 596; *Birdsey* v. *Kosienski,* 140 Conn. 403, 410, 101 A.2d 274; see General Statutes § 7135; *New York, B. & E. Ry. Co.* v. *Motil,* 81 Conn. 466, 471, 71 A. 563. In that situation, resort must be had to the rules of construction outlined in cases such as *Taylor* v. *Dennehy,* supra;

*Carlson* v. *Libby,* 137 Conn. 362, 368, 77 A.2d 332; *Birdsey* v. *Kosienski,* supra; and *Chappell* v. *New York, N.H. & H.R. Co.,* 62 Conn. 195, 204, 24 A. 997.

The decisive question, in the view we take of the case, is not whether any covenant not to maintain poles or overhead wires was entered into in favor of, and was enforceable by, the Stokeses or either of them, but whether, if there was such a covenant, it was merely personal to them or, on the contrary, is enforceable by this plaintiff as their successor in ownership of the property claimed to be benefited by the covenant. As a fact, the instrument proved effective to spare the Stokeses the annoyance of poles and overhead wires in front of their home as long as they lived.

The conclusion of the trial court that any agreement on the part of the grantees or any of them did not run with the land and endured at most during the lifetimes of the Stokeses is a conclusion which we cannot find erroneous. *Taylor* v. *Dennehy,* supra. That some benefit to the Stokes land would flow from having no overhead wires along the highway in front of it does not require a contrary construction, either under the rule of *Carlson* v. *Libby,* supra, or otherwise. The only certain method of avoiding controversy and making sure that an easement or a covenant in an instrument granting an easement will be construed as other than personal is to use appropriate language to make the intention clear. In the case of a natural person, such language might properly be "heirs and assigns." In the case of a corporation, it might properly be "successors and assigns." To avoid misunderstanding, it should be noted that this case does not involve an easement created by an exception, where a somewhat different rule obviously applies. See, for instance,

*Chappell* v. *New York, N.H. & H.R. Co.,* supra, 207.

Here, the agreement as a whole is consistent with the construction that, whatever the duration of the easement itself, the obligation not to maintain poles or overhead wires in front of the property, if in fact there was such an obligation, endured, at most, for the joint lives of the Stokeses. This was the court's construction and was the only construction which could give proper effect to the various provisions of the instrument as drawn.

There is no error.

In this opinion the other judges concurred.