Richard M. Rosenbaum, J.
Between May, 1969 and July, 1969 the defendant, a public utility, entered on to plaintiff’s land and installed telephone lines 3 feet deep, 10 feet wide and 1,600 feet long underground, all without any permission from the plaintiff. The plaintiff brings an action against the defendant for trespass and asks for compensatory damages and treble damages on the ground that the defendant’s trespass was willful. The plaintiff claims that the defendant damaged trees, shrubs and other growing things on the plaintiff’s property. The defendant interposes an answer in which it admits installing the underground telephone lines but that it did so in good faith and as a public right and duty. Defendant denies damaging plaintiff’s property. In its answer the defendant pleads as its first affirmative defense that plaintiff’s predecessors in title gave the defendant an easement in 1954 running with the land over part of the same area where the line in question is installed. The language of the easement refers strictly to maintenance of poles and wires above ground and further, it is clear that the easement was not recorded in the Office of the Clerk of the county wherein the property in question is located. The defendant points out that for it to maintain the above ground installation it would have to traverse part of the same area that would be involved in maintaining the underground installation. It is also noteworthy that the 1954 easement refers to the east side of Eelpot Road. The defendant *1073 claims that the plaintiff had constructive or actual notice of this easement. The defendant also pleads a second affirmative defense wherein the defendant claims that it was led to believe that the plaintiff’s property belonged to the Village of Naples and so, the defendant’s employee obtained an easement from said village and therefore, the defendant claims it entered plaintiff’s land under color of right. This purported easement was also unrecorded and its terms refer to underground work and installation of telephone wires and also refer to the north side of Eelpot Bo ad which is the side on which the defendant installed its underground telephone lines. The defendant further states that plaintiff was not damaged by the installation of underground lines and claims that locating the lines underground enhanced the value of the plaintiff’s property. Accordingly, the defendant counterclaims for inverse condemnation requesting the court to grant an easement to the defendant for the installation of underground telephone lines upon payment by the defendant to the plaintiff of a sum of money to be fixed by the court. The plaintiff interposes a reply containing a general denial and further stating that the plaintiff never had notice of either of the afore-mentioned easements and further, that the court lacks jurisdiction to grant inverse condemnation.
The easement given to the defendant by the plaintiff’s predecessors in title dated August 2, 1954 clearly did not give the defendant the right to install underground wires on plaintiff’s property. (Heyert v. Orange & Rockland Utilities, 17 N Y 2d 352.)
An examination of the 1954 easement indicates that it only applied to above ground rights and further, that it refers to the east side of Eelpot Boad, which according to the map submitted by the defendant, was not the side of the road on which the underground lines were installed. Where the terms of an easement are clear and unambiguous another easement will not be implied (17 N. Y. Jur., Easements and Licenses, § 59; Antonopulos v. Postal Tel. Cable Co., 261 App. Div. 564, affd. 287 N. Y. 712). Furthermore, this easement was never recorded so that the plaintiff did not have constructive notice of it, nor could it be said that plaintiff had actual notice inasmuch as it is obvious from examination of the map that the telephone poles installed above ground are located substantially to the south of the underground installation and in the highway right of way. The 1969 purported easement from the Village of Naples to the defendant is, in the opinion of this court, worthless since the Village of Naples did not own the land over which it gave said *1074 easement and so had no right to give it. A motion for summary judgment searches the record (CPLR 3212, subds. [b], [e]). Accordingly, both affirmative defenses contained in defendant’s-answer are dismissed.
It was pointed out earlier that the defendant has counterclaimed for inverse condemnation and has moved for summary judgment with regard to that counterclaim. In that regard 16 NYCRR 24.1 (f) states that a telephone corporation formed after September 1, 1910 must get permission and approval from the Public Service Commission for construction of new lines. In addition, if the lines are underground the telephone corporation must get a franchise from the municipality where located. An examination of the records of the County Clerk, County of Monroe discloses that the defendant, Rochester Telephone Corporation, was incorporated on February 26,1920 according to its certificate of incorporation. It would therefore be regulated in its conduct by the afore-mentioned regulation. Subdivision 7 of section 4 of the Condemnation Law requires that all preliminary steps required by law be taken in order to institute a statutory condemnation proceeding. Defendant’s answer and motion papers clearly fail to state that defendant has taken any, let alone' all, of the steps required by law above mentioned. Certainly, no less should or could be required of defendant merely because it is asking for inverse condemnation. There could be a serious question as to whether defendant would be able to obtain a franchise from the Village of Naples since the property wherein the underground lines are installed is private and not under village control.
It would seem further that section 27 of the Transportation Corporations Law could be interpreted to prohibit by implication, a telephone company from installing underground lines under private property without the owners ’ permission. Section 27 states in part: 11 § 27. Construction of lines.
‘1 Any such corporation may erect, construct and maintain the necessary fixtures for its lines upon, over or under any of the public roads, streets and highways; and through, across or under any of the waters within the limits of this state, and may erect, construct and maintain its necessary stations, plants, equipment or lines upon, through or over any other land, subject to the right of the owners thereof to full compensation for the same.” (Italics mine.)
Applying the principle expressio unius est exclusio alterius to section 27 would leave us with the impression that that section of the law did not contemplate a condemnation of subsurface *1075 rights for the purposes of installation under private property. (See McKinney’s Cons. Laws of New York, Book 1, Statutes, § 240.)
In an effort to determine the intent of the Legislature in passing section 27 (see Goldstein v. City of Long Beach, 28 A D 2d 558) the court has examined into the origins of said section. Sections 5 and 6 of chapter 265 of the Laws of 1848 refer only to installations over land. However, chapter 485 of the Laws of 1881 in referring to telegraph companies specifically provides for the installation of electrical conductors underground. Section 102 of chapter 566 of the Laws of 1890 appears to be the source of much of the verbiage contained in section 27 of the Transportation Corporations Law. It might be argued that the draftsmen in consolidating the various laws leading ultimately to the present section inadvertently eliminated reference to underground installation with regard to private property. This court is not willing to write anything into the statute especially when it cannot ascertain the intention of the Legislature.
In the case of Matteson v. Antenna-Vision (54 Misc 2d 859) the Supreme Court, Special Term held in a similar situation that for the court to grant an order of inverse condemnation the defendant must have made its installation under color of right and it would be necessary for the defendant to show that the use sought is a public use and that there is a public necessity therefor. The term ‘1 color of right ’ ’ concerns itself with the defendant’s good faith or lack thereof in entering upon the plaintiff’s property and making the installation underground pursuant to the easements hereinbefore referred to. In the Matte-son case (supra) the court said that as to telephone poles installed on private property outside the highway right of way there could be no color of right. The court held as to the poles within the highway right of way that color of right might well exist. In the instant case, the underground lines are in the highway right of way for a very short distance proportionately speaking and from a practical standpoint, that fact would make little or no difference. Several questions arise with regard to the propriety of defendant’s conduct in making the subject installation, such as defendant’s interpretation of the easement given by plaintiff’s predecessors to it, the thoroughness of the search of the Village of Naples tax records which indicated that the plaintiff owned land on the south side of Eelpot Road, rather than the north side where plaintiff actually owns the land, and the question as to whether or not it was reasonable and prudent for the defendant’s agent to rely on the representatives of the Village of Naples in accepting an easement which proved to be *1076 totally outside their province to grant. The plaintiff has conceded in his memorandum of law that the use involved herein is public. However, plaintiff properly points out that the question of public necessity is a question of fact that must be determined at the trial.
Inasmuch as defendant’s affirmative defenses and counterclaim are dismissed leaving only a general denial plaintiff’s motion for a severance becomes academic, as does plaintiff’s affirmative defense of lack of jurisdiction.
The only questions that call for trial are the questions to determine whether or not defendant trespassed and if so the damages to be awarded.