JOSEPH F. TAYLOR *v.* ISABELLE H. DENNEHY

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND INGLIS, JS.

Argued December 7, 1949—decided February 14, 1950.

*Joseph B. Morse,* with whom, on the brief,' was *Thomas F. Seymour,* for the appellant (plaintiff).

*J. J. Henry Muller, III,* and *William L. Beers,* for the appellee (defendant).

MALTBIE, C. J.   In this action the plaintiff sought damages and an injunction based on a claimed right of way over the land of the defendant, and from a judgment for the latter he has appealed.   The plaintiff claimed the right of way both by grant and by prescription.

The facts stated in the finding, with such changes as the plaintiff is entitled to have made, present this general situation: In 1927 Margaret C. Taylor, the wife of the plaintiff, owned two lots in Madison, one of which, lot 8, fronts southerly on Long Island Sound, and the other, lot 22, lies directly north of and across

a highway from lot 8. On both lots were summer cottages, and on the rear of lot 22 were two garages. The community then was and has since continued to be primarily one of summer residents. On April 7, 1927, Mrs. Taylor conveyed lot 8 to her niece, Helen Ward Dignan, by a warranty deed which, after referring to a map on file in the town clerk's office and stating the boundaries, contained these provisions: "Together with an easement or right of way over lot # 22 . . . 10 feet in width along the Westerly line of said lot extending Northerly to the garages in the rear of said lot, together with the use of one of said garages; and in the event that said garages are moved farther Northerly said right of way shall extend northerly to said garages. Hereby reserving a right of way over said lot # 8 three feet in width along the Westerly line thereof from the highway to the Sound; together with the household furniture, furnishings and household equipment contained in the dwelling situated on lot # 8 above described." On May 21, 1946, Mrs. Dignan conveyed the lot to the defendant; the deed had the usual habendum clause with the words "To have and to hold, the above granted and bargained premises, with the appurtenances thereof"; but no mention was made of the rights of way contained in the deed from Mrs. Taylor to Mrs. Dignan. Apparently to clear up any uncertainty in that deed, on June 13, 1946, Mrs. Dignan made a quitclaim deed to the defendant of the right of way over lot 22 to the garages located on it, "together with such right as the Releasor has to use one of said garages."

On June 7, 1927, Mrs. Taylor conveyed lot 22 to her brother-in-law Harry Rogers by warranty deed; it was executed in New Jersey and the plaintiff joined as a grantor; it contained the usual habendum provision in such deeds, "To have and to hold, the above granted and bargained premises, with the appurtenances

thereof"; but it made no specific mention of the rights created in Mrs. Taylor's previous deed to Mrs. Dignan. On March 31, 1947, Rogers conveyed this lot to the plaintiff; the deed contained this provision: "Together with a right of way of 3 feet, along the west side of lot # 8 . . . and subject to right of way of 10 feet along the west side extending from highway northerly to the garages in the rear of the premises herein conveyed; Together with the use of one of said garages, reference being had" to the deed from Mrs. Taylor to Mrs. Dignan.

Unless the occupants of the cottage on lot 22 can cross lot 8, the only access they have to the water front is by proceeding along the highway for a short distance to a beach open to the public. In 1927 and for a long time thereafter there was a fence along the highway where lot 8 abuts upon it. At the northwest corner of the lot there were trees of substantial size and bushes which would materially interfere with the use of the strip of land next the west boundary of the lot over which the right of way is claimed. For a number of years the occupants of the cottage on lot 22 crossed lot 8 for the purpose of going to the beach. To do so for most of the time they entered lot 8 through a gate near the middle of the north boundary, went diagonally to the west, then along the westerly boundary about 60 per cent of its length, crossed in front of the cottage and went down steps near the middle of the south boundary. During one or two seasons, however, separate steps were installed near the westerly boundary of the lot. During practically all the time between 1927 and 1947 the two properties were occupied by close relatives except that occasionally one or both cottages were rented to friends.

The trial court found as a subordinate fact that the intent of the reservation in the deed from Mrs. Taylor

to Mrs. Dignan was to create a right of way over lot 8 personal to the grantor rather than one appurtenant to lot 22. The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances; *Knowlton* v. *New York, N. H. & H. R. Co.,* 72 Conn. 188, 192, 44 A. 8; *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 523, 107 A. 138; *Ferrigno* v. *Odell,* 113 Conn. 420, 424, 155 A. 639; *Patzloff* v. *Kasperovich,* 116 Conn. 440, 441, 165 A. 349; and its interpretation presented a question of law. *Mills* v. *Roto Co.,* 104 Conn. 645, 647, 133 A. 913; *Margolis* v. *Wise,* 91 Conn. 152, 156, 99 A. 511. The first question before us is: Did the court err as matter of law in its conclusion that the reservation created a personal right in the grantor, rather than one appurtenant to lot 22, which she then owned?

· The reservation of the right of way made no mention of the person or persons to whom it should accrue and did not contain any reference to heirs or assigns. In view of that omission, the clause in the deed was adapted rather to the creation of a personal right than one appurtenant to the land retained by Mrs. Taylor, and, while this fact is not conclusive, it must control unless a contrary intent appears when the words are read in the light of related provisions of the deed and the surrounding circumstances. *Kowalski* v. *Mather,* 112 Conn. 594, 595, 153 A. 168. If we look to the deed, we are at once struck by the fact that it includes as an integral portion of the clause not merely a reservation of the right of way but also of the household furniture and equipment in the dwelling on lot 8; the latter portion of the reservation certainly was intended to create only a personal right; and it can hardly be supposed that Mrs. Taylor meant one portion of the reservation

to be personal and the other to be of a right appurtenant. Reading the deed as a whole, the most apparent intent is to grant and to reserve purely personal rights. It is significant, also, that when, only two months later, she conveyed lot 22 to her brother-in-law, no specific mention was made of any right of way over lot 8 and the only words in the deed which would include it were those found in the habendum clause in the standard form for such deeds, "with the appurtenances thereof." It is, of course, true that the right of way would be of benefit to anyone who might thereafter come to own lot 22, and the law inclines to construe a right in such a case to be appurtenant rather than personal. *Bauby* v. *Krasow,* 107 Conn. 109, 113, 139 A. 508. But, even weighing that circumstance on the scale, we are unable to conclude that the trial court erred in construing the words of the reservation in this case as creating merely a personal right in Mrs. Taylor to the use of the way over lot 8 so long as she continued to own lot 22, and in deciding that it did not pass to subsequent owners of lot 22.

As regards the claim of a prescriptive right of the occupants of lot 22 to pass over lot 8 to reach the shore, the trial court has found that the use was permitted as a neighborly accommodation among relatives and friends and not under a claim of right. These are findings of fact; *Villany* v. *D'Amelio,* 96 Conn. 680, 682, 115 A. 428; *Phillips* v. *Bonadies,* 105 Conn. 722, 727, 136 A. 684; and in the absence of any proof of permission given or express claim of right, the question whether the use was permissive or under a claim of right depends upon the surrounding circumstances. *Sachs* v. *Toquet,* 121 Conn. 60, 66, 183 A. 22. We can overturn the findings of the court only if there is no reasonable support for them in the evidence or in reasonable inferences to be drawn from the facts proved.

The course taken by the occupants of lot 22 in crossing lot 8 is strongly indicative that the use was merely permissive. In going to the beach they used the right of way delineated in the deed for only a portion of the distance; it is not likely that they were passing across the southern part of lot 8 and down the steps leading from the cottage on it to the beach under a claim of right; and this becomes evident when it is remembered that for a season or two they built steps for their own use near the westerly boundary of the lot. The plaintiff did not in fact claim in the trial court that the occupants of lot 22 had acquired a prescriptive right over the three-foot right of way delineated in the deed; they entered the lot about the middle of the frontage on the highway, passed diagonally to a point near the west boundary, followed along it for a distance, and then crossed to the steps about the middle of the shore front. The plaintiff's claim was for nothing more than an indefinite user of lot 8 as a way to reach the beach. A prescriptive right of way cannot be acquired by traveling over land unless the use defines its bounds with reasonable certainty. *Aksomitas* v. *South End Realty Co.,* 136 Conn. 277, 285, 70 A. 2d 552; note, 143 A. L. R. 1403. When we consider the close family and friendly relationships between the occupants of the two lots during most of the period in question, we must conclude that the trial court could reasonably find that the use of lot 8 was not under a claim of right. No right of way could, therefore, arise by prescription. *Sachs* v. *Toquet,* supra.

There is no error.

In this opinion JENNINGS, DICKENSON and INGLIS, Js., concurred; BROWN, J., dissented.