## BARBARA EZIKOVICH *v.* CAREN LINDEN ET AL.
## (10923)

DUPONT, C. J., DALY and HEIMAN, Js.

Argued November 4, 1992—decision released January 12, 1993

*Karen L. Murdoch,* with whom was *Wesley W. Horton,* for the appellant (plaintiff).

*Theodore A. Harris,* for the appellees (defendants).

DALY, J. The plaintiff appeals from the trial court's judgment, rendered pursuant to the attorney trial referee's report, denying the plaintiff's request for an injunction prohibiting the defendants, Robert and Caren Linden, from overburdening the defendants' easement over the plaintiff's property and granting the defendants' request on their counterclaim to enjoin the plaintiff from interfering with their use of the easement. The plaintiff had asked the court to bar the defendants' construction and maintenance of a boat storage rack and other structures on her property while the defendants had asked the court to prohibit any further interference by the plaintiff with the use and maintenance of these structures.[1]

The following facts are relevant to this appeal. The plaintiff owns two adjacent tracts of land located on the east side of Quarry Dock Road in the town of East Lyme. Both tracts extend from the road to the Niantic River. The plaintiff's house is situated on the first tract, which is north of the second tract. The defendants own property on the west side of Quarry Dock Road and possess an easement over the second tract for access to the Niantic River.

---

[1] The defendants also sought punitive damages, but none were awarded and the defendants have not pursued this issue on appeal.

The chains of title for both parties originate with the grantor, Clara S. Pulsifer. She conveyed the first and second tracts of land on the east side of Quarry Dock Road to Michael D. Schultz, the plaintiff's predecessor in interest, by warranty deed dated April 20, 1972. At that time, no structures were built on or attached to the property. The 1972 deed from Pulsifer to Schultz provided for the following reservation: "Reserving to the grantor, her heirs and assigns forever the right of way over the second tract herein from Quarry Dock Road to the Niantic River for ingress and egress to the Niantic River, and reserving the tract and the use of said second tract for general boating purposes, as an appurtenance to the land of the grantor located west of Quarry Dock Road. Provided further that no building shall be constructed on said second tract and no uses shall be permitted thereon which interfere with the right of way and uses thereof reserved by the grantor herein." By warranty deed dated April 24, 1981, Schultz conveyed both tracts to the plaintiff. The deed from Schultz to the plaintiff referred to the reservations in favor of Pulsifer, her heirs and assigns in the deed from Pulsifer to Schultz.

After conveying the two tracts to Schultz, Pulsifer still owned property comprising approximately sixty-five acres on the west side of Quarry Dock Road. Pulsifer conveyed the sixty-five acres of land to a developer, William H. Wilson, on June 23, 1973. That deed conveyed to Wilson "the right and easement to pass and repass over [the second tract except for a strip twenty feet wide that runs along the southerly line of the second tract] for boating and other waterfront purposes." Wilson subsequently subdivided the sixty-five acre tract and lot seven of the subdivision was ultimately conveyed to Caren Linden by deed dated July 10, 1981. That deed conveyed "the right and easement to pass and repass over [the second tract except

for a strip twenty feet wide that runs along the southerly line of the second tract] and to use the waterfront adjoining said premises for boating and other waterfront purposes." It further provided "that the easements described herein will be for the benefit of the Grantees, their successors and assigns and will run with the land." Since the conveyance of the second tract from Pulsifer to Schultz, owners of the dominant tenements have used the second tract by walking to and from the river, enjoying the view and engaging in activities such as fishing and swimming.

Robert Linden began using the right-of-way conveyed to his wife to transport rowing shells to the river's edge by vehicle but had difficulty launching them. To solve this problem, he had a floating dock constructed at the edge of the second tract. A walkway to that dock was also built. Initially, he stored the shells on the ground near the dock but then constructed a rack that is visible from the plaintiff's house on the first tract.[2] The plaintiff dismantled the rack in November, 1990, and the defendants built another one. The plaintiff had the second one dismantled in April, 1991.

The attorney trial referee concluded that Pulsifer's deed reserved the use of the second tract for general boating purposes and riparian rights and uses to her heirs and assigns, including the defendants. The attorney trial referee determined that construction of a dock and a storage rack fell within the ambit of this reservation and, therefore, recommended judgment for the defendants on both the complaint and the counterclaim. The trial court accepted the findings of the attorney trial referee and enjoined the plaintiff from obstructing or interfering with the defendants' passage or repassage over the easement premises from and to Quarry Dock Road and the Niantic River. The plain-

---

[2] The rack is a six foot high wooden framework on which the shells rest.

tiff was enjoined from interfering with or tearing down the floating dock, walkway or shell storage rack. This appeal ensued.

The only issue before us is whether the maintenance of the shell storage rack is a permissible use of the easement. We disagree with the attorney trial referee's conclusion that the defendants' construction and maintenance of the shell storage rack was a permissible use.[3]

"The rule is well established that the owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his right. . . . The granting or refusing of injunctive relief, however, rests within the sound discretion of the trial court and its action will not be disturbed unless it has abused its discretion." (Citations omitted.) *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 440, 440 A.2d 935 (1981).

"The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . This is not to overlook, however, that [t]he owner of an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more." (Citations omitted; internal quotation marks omitted.) *Kuras* v. *Kope,* 205 Conn. 332, 341–42, 533 A.2d 1202 (1987).

To determine the nature of an easement created by deed, we must discern the intention of the parties to the deed by considering the language of the deed, the situation of the property and the surrounding circumstances. *Lago* v. *Guerrette,* 219 Conn. 262, 267–68, 592 A.2d 939 (1991). We give the language of the easement

---

[3] The trial court also enjoined the plaintiff from interfering with the defendants' maintenance and use of the dock, the ramp to the dock, and a proposed walkway. Any challenge to that portion of the injunction was abandoned at oral argument.

its ordinary import where nothing in the situation or surrounding circumstances indicates a contrary intent. Id., 268; *American Brass Co.* v. *Serra,* 104 Conn. 139, 142, 132 A. 565 (1926). "Any ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee. *Gager* v. *Carlson,* 146 Conn. 288, 298, 150 A.2d 302 (1959). *Mackin* v. *Mackin,* 186 Conn. 185, 189, 439 A.2d 1086 (1982). The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . and its interpretation present[s] a question of law. . . . *Taylor* v. *Dennehy,* 136 Conn. 398, 402, 71 A.2d 596 (1950) . . . . *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982)." (Internal quotation marks omitted.) *Lago* v. *Guerrette,* supra.

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view." (Internal quotation marks omitted.) *Peck* v. *Mackowsky,* 85 Conn. 190, 194, 82 A. 199 (1912). Because our decision turns primarily on the construction of the deed, as opposed to the credibility of witnesses, we are not required to give the customary deference to the factual inferences made in the trial court and may determine the issue of intent as a matter of law. *Lago* v. *Guerrette,* supra; *Expressway Associates II* v. *Friendly Ice Cream Corporation,* 22 Conn. App. 124, 127, 576 A.2d 575 (1990), rev'd in part on other grounds, 218 Conn. 474, 590 A.2d 431 (1991); *Contegni* v. *Payne,* 18 Conn. App. 47, 51, 557 A.2d 122 (1989); *Marion Road Assn.* v. *Harlow,* 1 Conn. App. 329, 332, 472 A.2d 785 (1984).

The deed from Pulsifer to Schultz, the plaintiff's predecessor in interest, reserved an easement for "general boating purposes." Pulsifer's later conveyance of the sixty-five acres gave Wilson, his heirs and assigns an easement over the second tract "for boating and other waterfront purposes." This language is binding on the plaintiff under the reservations in her chain of title originating with Pulsifer. The attorney trial referee found that the construction of the storage rack for the rowing shells fell within the ambit of this language. We do not agree.

Definitions of "general boating purposes" and "other waterfront purposes" have not been fashioned in Connecticut. In *Cabal* v. *Kent County Road Commission*, 72 Mich. App. 532, 250 N.W.2d 121 (1977), the Michigan Appellate Court determined that a right of access to a lake included the right to maintain a dock to float boats, but did not include the right to store boats on the servient tenement. It is not clear whether this case involved storage racks for the boats or whether the boats were stored directly on the land. While it is true that the easement in *Cabal* v. *Kent County Road Commission,* supra, was not an easement for "general boating purposes," the parties there agreed that the easement of access provided for boating, fishing and swimming on the lake. The court distinguished the maintenance of docks from the storage of boats when it found that the former use was appurtenant to the easement, which allowed boating, and that the latter was not. Id., 536–37. The present case is similar.

The easement here may be used by the defendants for "boating purposes." There is no ambiguity in the language of the deeds in the chains of title; the deeds do not indicate that a storage rack falls within the purview of the term "boating purposes" much less "waterfront purposes." Like the Michigan Appellate Court,

we distinguish between the dock and the rack. The dock is directly related to, and in this case necessary for, the furtherance of the purposes to which both chains of title refer, while the rack hampers the view that the users of the easement have enjoyed since Pulsifer owned the property. Also, the rack merely serves to store the rowing shells. The defendant does not need the rack to launch or use the shells safely for purposes of boating or, in this case, rowing.

Furthermore, the deed from Pulsifer to Schultz stipulates that "no building shall be constructed on said second tract and no uses shall be permitted thereon which interfere with the right of way and uses thereof reserved by the grantor herein." This language indicates that Pulsifer intended that the second tract remain uncluttered to allow for the full enjoyment of the tract. It is significant that when Pulsifer conveyed her properties, no structures had been built on the second tract.

It is reasonable to infer from the language of the deed and the circumstances relating to the second tract that Pulsifer intended the topography to remain uncluttered to maximize the enjoyment of the waterfront. Because the rack does not come within the purview of the expressed "boating purposes" of the easement and the rack interferes with Pulsifer's intent to keep the property uncluttered, we conclude that the construction and maintenance of the rack is not an allowed use under the easement.

We are, therefore, satisfied that the easement does not permit the construction of a boat rack on the servient estate.

The judgment is reversed only to the extent that the plaintiff was enjoined from interfering with the use of the storage rack and the case is remanded with direction to render judgment enjoining the defendants from maintaining a boat storage rack on the servient estate.

In this opinion the other judges concurred.