## LINDA McCULLOUGH *v.* WATERFRONT PARK ASSOCIATION, INC., ET AL.
### (11420)

DuPont, C. J., Foti and Heiman, Js.

Argued April 29—decision released August 31, 1993

*Raymond T. DeMeo,* for the appellant (plaintiff).

*Barry D. Guliano,* with whom, on the brief, were *Gregory F. Demanche, Mary Ann Puglise* and *James T. Scully,* for the appellees (defendants).

DuPont, C. J. This appeal arises from an action brought by the plaintiff, Linda McCullough, against the defendants, Waterfront Park Association, Inc. (Association), and several individual members of the Association, seeking damages and injunctive relief because of an alleged trespass on property to which the plaintiff claims ownership. The Association filed two alternative special defenses, one claiming that it had acquired title by adverse possession, and the other claiming a prescriptive easement. The trial court rendered judgment in favor of the defendants, concluding that the plaintiff did not have title to the land, and, alternatively, that the Association had acquired a prescriptive easement in it. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the plaintiff does not have record title to the land in dispute, (2) concluded, as an alternative holding, that the Association has a prescriptive easement to the same piece of land, and (3) declined to consider the plaintiff's claim that her littoral rights were violated by the defendants' use of the land in dispute. We reverse, in part, the judgment of the trial court.

The facts as found by the trial court are as follows. On June 1, 1989, the plaintiff purchased property located at 35 Shore Drive in Coventry. Her house overlooks a lake and that portion of the lake that lies in front of her house is a cove. A spit of land projects into the cove and is commonly referred to as "the peninsula." In the spring of 1990, the Association placed five docks off the western side of the peninsula in front of the plaintiff's property and ten boats belonging to members were docking there by July, 1990. Use of the docks

was reserved by the Association for its members who did not own property directly on the lake and who had signed up for dockage. During the summer of 1990, the plaintiff protested to the Association about the placement of the docks and the use of the western side of the peninsula for docking boats. In the spring of 1991, the plaintiff commissioned an A-2 survey of her property. This survey indicated that the plaintiff owned the western two-thirds of the peninsula. The plaintiff makes no claim to the one-third of the peninsula that lies to the east of her property. After receiving the survey, the plaintiff met with representatives of the Association and reasserted her claim to the western two-thirds of the peninsula. The Association disputed the results of the plaintiff's survey and refused to remove the docks. Consequently, the plaintiff placed "No Trespassing" signs on the peninsula and notified the Association by letter that her littoral rights were being violated by the placement of the docks off the peninsula. The signs were removed by unknown parties.

The docks were removed after the summer of 1990, and in April, 1991, four of the five docks were reinstalled. A fifth dock was relocated on the eastern side of the peninsula. The plaintiff again promptly notified the Association of her objection to the docks. The Association did not remove the docks and indicated to the plaintiff that it planned to install the docks during each subsequent boating season.

In May, 1991, the plaintiff brought this action in four counts against the defendants alleging trespass, and seeking injunctive relief and monetary damages. After a trial to the court, the court issued a lengthy and thoughtful memorandum of decision holding that the plaintiff had not met her burden of proof as to each of the elements of trespass and found for the defend-

ants on all counts. As an alternative holding, the court held that the defendants had acquired a right to use the land by prescriptive easement.

An action for damages for trespass is a possessory action; *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 461, 338 A.2d 470 (1973); for which title is only incidentally relevant. *Staff* v. *Hawkins,* 135 Conn. 316, 317, 64 A.2d 176 (1949). When an injunction is sought to restrain a trespass, however, title is an essential element in a plaintiff's case. *Wadsworth Realty Co.* v. *Sundberg,* supra; *Barrs* v. *Zukowski,* 148 Conn. 158, 165, 169 A.2d 23 (1961). Consequently, where both damages for trespass and an injunction are sought, both title to and possession of the disputed area must be proved; *Wadsworth Realty Co.* v. *Sundberg,* supra; *More* v. *Urbano,* 151 Conn. 381, 383, 198 A.2d 211 (1964); and the burden of proving them is on the plaintiff. *More* v. *Urbano,* supra. Possession may be actual or constructive. *Wadsworth Realty Co.* v. *Sundberg,* supra. Actual possession means actual and exclusive possession of the disputed area. *Radican* v. *Hughes,* 86 Conn. 536, 545, 86 A. 220 (1913). If a plaintiff relies on constructive possession, and has alleged both title and possession in a complaint, a plaintiff must prove, in addition to title, the absence of actual and exclusive possession in another. *Wadsworth Realty Co.* v. *Sundberg,* supra; *More* v. *Urbano,* supra.

The court found that the plaintiff did not have exclusive possession of the peninsula and the plaintiff has not challenged this finding. Consequently, the plaintiff relies on the theory of constructive possession. The plaintiff claims that the trial court improperly found that she did not have record title to that portion of the peninsula that lies in front of her property. The plaintiff argues that the court, in making this finding, misinterpreted the language of the plaintiff's deed when determining where the northern boundary line of her

property was located. The plaintiff's deed describes her northern boundary as "the shore." The plaintiff contends that the term "shore" means the land between the ordinary high water and low water mark. Consequently, the plaintiff claims that her property extends to the high water mark, which would include the peninsula. Because the distance from the southeastern corner of the plaintiff's property to the end of the peninsula is 342.5 feet and the length of the eastern boundary given in the deeds for this parcel from the southeastern corner is 160 feet, the court determined that "shore" meant a line on the bank of the lake short of the high water mark, and concluded that the peninsula was not part of the plaintiff's property.

When determining a boundary line in a deed, if the description in the deed is clear and unambiguous, it must be given effect. In such a case, the inquiry is not the intent of the parties but the intent that is expressed in the deed. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 511, 280 A.2d 877 (1971). The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. *Taylor* v. *Dennehy,* 136 Conn. 398, 402, 71 A.2d 596 (1950). "On appeal the scope of review of such a question is plenary and does not require the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Carbone* v. *Vigliotti,* 222 Conn. 216, 222, 610 A.2d 565 (1992); *Ezikovich* v. *Linden,* 30 Conn. App. 1, 6, 618 A.2d 570 (1993).

"[I]t is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the

memorandum of decision . . . ." (Citation omitted; internal quotation marks omitted.) *Roche* v. *Fairfield,* 186 Conn. 490, 494–95, 442 A.2d 911 (1982), quoting *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The property along the southern side of the lake was developed by James H. Fitzgerald in 1919. In 1931, Fitzgerald conveyed by warranty deed to Alvin Nelson the property that is now the plaintiff's property. The description of the plaintiff's property in her warranty deed is identical to the description of the property in the deed from Fitzgerald to Nelson. In the deeds, the eastern boundary is described as running "to the shore of Lake Wangumbaug"[1] and the northern boundary is described as running "by said shore." The term "shore" has been defined in Connecticut law as "the land between ordinary high and low-water mark, the land over which the daily tides ebb and flow. . . ." (Internal quotation marks omitted.) *Mihalczo* v. *Woodmont,* 175 Conn. 535, 539, 400 A.2d 270 (1978); see also *Short Beach Cottage Owners Assn.* v. *Stratford,* 154 Conn. 194, 200, 224 A.2d 532 (1966) (shore is land below the high water mark, beach is above the high water mark); *Matto* v. *Dan Beard, Inc.,* 15 Conn. App. 458, 476, 546 A.2d 854, cert. denied, 209 Conn. 812, 550 A.2d 1082 (1988) (land between high and low-water marks called foreshore).[2] Because the plaintiff's deed clearly indicates that her boundary line runs *to* the shore and *by* the shore, we conclude, as a matter of law, that the intent expressed in the deeds describing this property was that the northern boundary line is the high water mark.

---

[1] The lake is now commonly known as Coventry Lake.

[2] In Black's Law Dictionary (5th Ed. 1979), the term "shore" is defined as "[t]he lands adjoining navigable waters, where the tide flows and reflows, which at high tides are submerged and at low tides are bare. The space bounded by the high and low water marks."

The court used the difference in the distances between the high water mark of the peninsula as it now exists and the length of the eastern boundary in the deed descriptions to support its conclusion that the peninsula was not part of the plaintiff's property because it determined that the peninsula existed in 1931 in substantially the same size and shape as it does presently. We conclude, however, that this finding was not supported by the evidence.[3] The crucial year in question is 1931. Only evidence that could reliably demonstrate that the peninsula existed in 1931 could be used by the court to make its determination. The primary basis for the trial court's finding that the peninsula existed in 1931 in substantially the same size and shape as in 1989 was three photographs of the peninsula. These photographs were taken substantially later than the year in question. The oldest photograph was from 1941.[4] In addition to the photographs, the court had before it a map of the area drawn by the developer prior to 1931 and the A-2 survey commissioned by the plaintiff.[5] The pre-1931 map does not include any land mass, much less a peninsula, at the current location of the peninsula. The survey indicates that the high water mark in 1931 was at what currently is the base of the peninsula. The map and survey are indicators that the peninsula did not exist in 1931. The three later photo-

---

[3] There was some evidence that the peninsula was created or enhanced by the dredging of the lake in the 1950s. The plaintiff claims that the portion of the peninsula located within her fifty foot frontage arose because of accretion and thereby became her property. "[T]he owner of waterfront property is benefited in title by whatever may be joined to his land, above the high-water mark, through accretion. . . ." (Citation omitted; internal quotation marks omitted.) *Roche* v. *Fairfield,* 186 Conn. 490, 495, 442 A.2d 911 (1982).

[4] The trial court's memorandum of decision indicates that this photograph was taken in 1938, but the back of the exhibit indicates that it was taken in 1941.

[5] Conflicting testimony as to the existence of the peninsula was also presented.

graphs establish only that the peninsula existed by 1941. Because the plaintiff was conveyed title to the "shore of Lake Wangumbaug,"[6] that is, its high water mark, and because the high water mark is located at the end of the peninsula, we conclude that the trial court's determination that the plaintiff did not prove record title interest in the western two-thirds of the peninsula is not supported by the record and that the plaintiff has title to the western two-thirds of the peninsula. Because, however, the plaintiff did not prove the absence of actual possession in another, or her exclusive possession, she is not entitled to damages for trespass and is not entitled to injunctive relief that would prohibit the defendants from using the land in question in any way.

Having determined that the plaintiff has title to the western two-thirds of the peninsula, we must now address the trial court's alternative holding that the Association had acquired a prescriptive easement to use the western two-thirds of the peninsula. A prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. General Statutes § 47-37; *Schulz* v. *Syvertsen,* 219 Conn. 81, 92 n.8, 591 A.2d 804 (1991); *Krohner* v. *Seyburt Associates Ltd. Partnership,* 20 Conn. App. 298, 300–301, 566 A.2d 995 (1989). The standard of proof that is required is a fair preponderance of the evidence. *Schulz* v. *Syvertsen,* supra, 91; *Reynolds* v. *Soffer,* 190 Conn. 184, 188, 459 A.2d 1027 (1983).

The plaintiff claims that the defendants did not prove all the elements necessary to acquire an easement by prescription. Specifically, the plaintiff contends that the defendants' use of the peninsula was not exclusive but

---

[6] In contrast, the northern boundaries of other properties to the east and west of the plaintiff's land are designated as "the concourse."

rather in common with the general public, and, therefore, not under a claim of right. Conflicting evidence was presented on the issue of exclusive use. Evidence was presented by the defendants that they had frequently and regularly used the peninsula for recreational purposes and that this use began in 1941 and has been continuous and uninterrupted to the present time. They also maintained that a sign was posted that the beach area on the eastern side of the peninsula was restricted to members of the Association only. Evidence was presented by the plaintiff that despite the Association's long history of use of the peninsula and the posting of a sign, persons other than the Association members used the peninsula and these people were not asked to leave. Additionally, testimony was presented that although the Association members cleaned the beach area adjacent to the peninsula, they did not maintain the peninsula in any way. Although the trial court could have found that the Association's use of the peninsula was in common with the public, its finding to the contrary is based on subsidiary facts that the court could have reasonably found.

Even if the court had found that the Association's use of the peninsula was not exclusive but was in common with the public, this would not have eliminated the requirement that the defendants' use be under a claim of right. When a party's use of land is in common with the public, a claim of right is proven by the user's performing an act of which the servient owner is aware that clearly indicates the user's claim of right. *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 619–20, 495 A.2d 1006 (1985); *Krohner* v. *Seyburt Associates Ltd. Partnership,* supra, 301; *Wadsworth* v. *Zahariades,* 1 Conn. App. 373, 376, 472 A.2d 29 (1984). This presents a question of fact for the trier. *Saunders Point Assn., Inc.* v. *Cannon,* 177 Conn. 413, 418, 418 A.2d

70 (1979); *Krohner* v. *Seyburt Associates Ltd. Partnership,* supra; *Wadsworth* v. *Zahariades,* supra.

In this case, the trial court found that the defendants had used the peninsula since 1941, that their use had been in the presence of the plaintiff and her predecessors in title without recognition of the rights of the plaintiff and that the defendants never sought permission to use the peninsula from any owner of 35 Shore Drive. The court reasonably found that the defendants' use was under a claim of right even if their use was in common with the public. Therefore, because the defendants proved an open, visible, continuous and uninterrupted use for fifteen years under a claim of right, the court's alternate holding that the defendants had acquired an easement by prescription was a reasonable conclusion from the evidence before it.

The plaintiff claims that, even if the defendants had acquired a prescriptive easement, the placement of the docks on the western side of the peninsula constitutes an unreasonable expansion and overburdening of the easement. We agree.

The determination of the scope of a prescriptive easement is a question of fact. *Reynolds* v. *Soffer,* supra, 190; *Everett* v. *Pabilonia,* 11 Conn. App. 171, 177, 526 A.2d 543 (1987). Our review of the factual findings of the trial court is limited to the determination of whether these findings are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. "A factual finding of the trial court is clearly erroneous if it is unsupported by the evidence or if, in view of the evidence and pleadings in the whole record, this court is left with the definite and firm conviction that a mistake has been committed. *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* [supra] . . . ." (Citations omitted; internal quotation marks omitted.) *Everett* v. *Pabilonia,* supra.

An easement created by prescription is more limited than an easement by grant. *Lichteig* v. *Churinetz,* 9 Conn. App. 406, 410, 519 A.2d 99 (1986). "[W]hen an easement is established by prescription, the common and ordinary use which establishes the right also limits and qualifies it. . . . The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit." (Citations omitted; internal quotation marks omitted.) *Kuras* v. *Kope,* 205 Conn. 332, 341, 533 A.2d 1202 (1987). An owner of an easement has all rights incident or necessary to its proper enjoyment of the easement. Id. "[T]he right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both." (Internal quotation marks omitted.) Id., 342, quoting 2 G. Thompson, Real Property (1980 Replacement) § 427. Thus, one who has an easement by prescription has the right to do such acts that are reasonable and necessary to effectuate that party's enjoyment of the easement unless it unreasonably increases the burden on the servient tenement. *Kuras* v. *Kope,* supra, 344. "An unreasonable increase in burden is such a one as it is reasonable to assume would have provoked the owner of the land being used to interrupt the use had the increase occurred during the prescriptive period." 5 Restatement, Property § 479, comment (c), p. 3003 (1944).

The trial court held that the placement of the four large wooden docks off the west side of the peninsula fell within the reasonable use of the prescriptive easement acquired by the defendants and created no added burden to the servient estate. The court also held that the easement allowed use for recreational purposes appropriate to the season. The court observed that the only burden to the plaintiff would be a somewhat

altered view. Although the trial court held that the defendants' use of the peninsula created no added burden to the plaintiff's estate, the trial court also found that prior to the placement of the docks at issue, docks were only sporadically placed on the peninsula. The court found that for a twenty year period "during the 1960s to the 1980s, Association members occasionally installed docks on the western side of the peninsula" and that the "presence of these docks was sporadic. . . ." More typically, boats were "secured to the land by staking, anchoring or by the beaching of the boats." The boats that were moored or pulled up onto the peninsula were small boats. With the placement of the current wooden docks, however, the size of boats that moor off the peninsula has increased. Furthermore, there was evidence that the smaller boats have been replaced by large power boats that increase the number of people on the plaintiff's land, block recreational use of the water by the plaintiff and pollute the water bordering the plaintiff's property. Other testimony was that the defendants chose to place the docks on the western side of the peninsula instead of the eastern side of the peninsula because placement on the eastern side would have interfered with the Association's swimming area. The placement of the docks on the western side of the peninsula essentially negates any water activities by the plaintiff.

Although some variation in the use of an easement when it is created and the use made after its creation is unavoidable, we conclude that the trial court's conclusion that the placement of the docks created no added burden to the servient estate cannot stand in light of the court's own finding of subsidiary facts. The use of the easement decreed by the trial court is impermissibly expanded beyond that acquired by prescription. See *New Canaan Country School, Inc.* v. *Rayward,* 144 Conn. 637, 641, 136 A.2d 742 (1957). We conclude,

therefore, that the placement of the docks off the plaintiff's property is an unreasonable increase in the scope of the easement acquired by the defendants and that the placement of the docks significantly burdens the plaintiff's use of the water bordering her property, thereby interfering with her littoral rights. *Kuras* v. *Kope,* supra. We, therefore, limit the defendants' use of the western two-thirds of the peninsula to recreational purposes appropriate to the season, as long as that use does not interfere with the plaintiff's littoral rights. See *Hagist* v. *Washburn,* 16 Conn. App. 83, 88, 546 A.2d 947 (1988). We also hold that the defendants may not place any docks off the western two-thirds of the peninsula. See *Ezikovich* v. *Linden,* supra, 8.

The plaintiff also claims that the trial court's description of the boundaries of the easement is logically and legally inconsistent with the plaintiff's deed. We agree. The court stated that the defendants' easement was in the western two-thirds of the peninsula, but its metes and bounds description of the easement covers a larger area. The boundaries of a prescriptive easement must be defined with reasonable certainty. *Schultz* v. *Syvertsen,* supra, 92–93; *Robert S. Weiss & Co.* v. *Mullins,* supra, 621; *Wadsworth* v. *Zahariades,* supra, 377. If the dimensions in the metes and bounds description were to stand, the defendants would acquire an easement over the plaintiff's entire fifty feet of lake frontage, rather than over that portion of the frontage from which the peninsula extends. This would encompass an area never used or claimed by the defendants. The evidence presented at trial supported the trial court's finding that the defendants had acquired a prescriptive easement only to the western two-thirds of the peninsula. Because the boundaries of the defendants' prescriptive easement have been established with reasonable certainty as being the western two-thirds of the peninsula, the metes and bounds description of the defend-

ants' easement in the trial court's memorandum of decision must be set aside. The precise area of the easement cannot be defined in this case in terms of metes and bounds because of accretion and avulsion. The submergence and reemergence of a sand or mud spit of land or the gradual and imperceptible action of winds, storms or tides, which changes the contour and footage of land adjoining water, make any description of the plaintiff's northern boundary other than "to the shore" impossible. See *Roche* v. *Fairfield,* supra.

The judgment for the defendants is reversed in part and the case is remanded with direction to render judgment that the plaintiff has record title to the western two-thirds of the peninsula and that the Association has acquired a prescriptive easement over that portion of the peninsula, and enjoining the defendants from placing any docks off the western two-thirds of the peninsula.

In this opinion the other judges concurred.