[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Ike's Auto Body, Inc. brought this action against the defendants, Brian E. Martin and Harold Jasch seeking an injunction, money damages, attorneys fees and costs. Subsequently, Marie A. Kearns, Daniel Whitford, Thomas J. Kearns and Judith A. Jasch were joined as defendants and an amended complaint was filed seeking a judgment determining the rights of the parties in certain land located in the Town of Goshen described as follows:
 That certain piece or parcel of land with all buildings standing thereon, situated in the Town of Goshen, County of Litchfield and State of Connecticut, and more CT Page 14507 particularly bounded and described as follows, to wit:
 Beginning at an iron post in the north line of Whitford road, said iron post being the southeast corner of parcel herein conveyed; thence, N. 825 feet to a point; thence west along a line parallel to said Whitford Road, 208 feet to a point; thence S. 825 feet more or less along a fence to a point int he [in the] North line of Whitford Road; thence E. along North line of Whitford Road 150 feet to a road leading to a junk yard; thence crossing road leading to the junk yard and form the East boundary of said road 58 feet along north line of Whitford Road to the iron post, being the point and place of beginning.
The defendants Martin and Jasch filed a counterclaim seeking the establishment of the boundary line of the plaintiff's property and the quieting of title.
The plaintiff claims to have acquired title to its premises by virtue of a warranty deed from Patsy Marco Leoni and Harold T. Jasch, Jr. dated June 3, 1965, recorded in Goshen Land Records, volume 40, page 529.
The plaintiff in this action is a Connecticut corporation engaged in the salvage business which has a business location a 225 North Goshen Road, Goshen, Connecticut. Leoni and Jasch had owned the property since November 5, 1962 at which time they acquired it from Waldo E. Martin, Jr and Marie W. Martin by deed recorded in Goshen Land Records, volume 40, page 435. The Martins had acquired the property by deed from Gail Whitford, dated April 1, 1958, recorded in Goshen Land Records, volume 40, page 234, and it was the Martins who commenced to operate the facility as a junk yard. Therefore, as of the time that the plaintiff acquired the premises known now as Ike's Auto Body, Inc., it had been used as an auto salvage yard for over seven years, having been previously known as Goshen Auto Parts.
At the time that the plaintiff's president, Francis Kaczmarczyk, was shown the property by Jasch and Leoni, he walked the boundary lines with them prior to purchasing the same. The premises were already owned as an auto salvage yard and operated as such, and the plaintiff's president, Francis Kaczmarczyk was shown the boundary lines as described in the survey of Robert W. Sterling, specifically including the westerly line along a stonewall and barbed wire fence as shown on the Sterling and CT Page 14508 Martin surveys.
Jasch and Leoni, in connection with their licensing of the facility by the Department of Motor Vehicles, in the sketch that accompanied their application had shown the westerly line as being a stonewall approximately one mile easterly of route 63 and the deeds into Jasch and Leoni and the deed into the Martins had described the westerly line as running "along a fence", referring to a barbed wire fence running in the same line as the wall along the westerly line as shown on both the Sterling and Martin maps.
At the time that the plaintiff acquired the premises in 1965, the northerly and easterly lines as shown on the Sterling map were occupied by junked vehicles, vehicle parts, etc., but were not fenced. Shortly after Kaczmarczyk's acquisition of the property in 1965, Kaczmarczyk began to move junked cars out of the northwesterly corner of the property which was occupied by trees and abandoned vehicles.
In 1972, a complaint was received by the Department of Motor Vehicles from David Whitford concerning the lack of fencing around the plaintiff's facility as a result of which after a hearing held on November 27, 1973, a fence was erected by the plaintiff around the then occupied portion of this premises which was a board fence completely surrounding the junked cars as they then sat on the plaintiff's premises. The plaintiff did not attempt at the time of that fencing to enclose the property which had been described to him and the property which he felt he owned by deed.
From 1965 to the present, the plaintiff has used and occupied under conditions consistent with adverse possession the entire premises shown on the sterling map for all uses incident to the operation of a salvage yard.
In 1991 in an effort to comply with Department of Motor Vehicle regulations, the plaintiff retained the services of William Berglund and Robert Sterling to survey the property so that he could erect a fence around the boundary lines thereof. The initial Berglund survey was generated, which showed the westerly line in the same location as is presently indicated in both the Sterling and earlier Martin map.
In September 1994, pursuant to the requirements of the Department of Motor Vehicles, the plaintiff was in the process of CT Page 14509 erecting a fence along its westerly line so as to comply with DMV regulations. On September 11, 1994, the defendant Brian Martin, using a bucket loader tore down approximately 300 feet of fencing which had been erected by the plaintiff at a cost of approximately $2,500. No communication was received by the plaintiff from Martin or anyone on his behalf complaining about the location of the fence before this act of vandalism occurred
The plaintiff, nevertheless, in order to comply with the fencing requirement of the DMV in the spring of 1995 had Robert Sterling prepare a survey map of the property to show the deed line on the west and the lines of occupation on the north and east, which map which would be filed both with the Town of Goshen and with the DMV so that fence construction could be recommenced along the westerly line. This survey was completed in the spring of 1995 and fence construction was again started by the plaintiff along the westerly line shown on the resubmitted Sterling map. On June 25, 1995, the defendant Harold Jasch, tore down the survey markers erected along the westerly line as surveyed and marked by the plaintiff's surveyor and erected a fence and no trespassing signs in the vicinity of the fence construction, thus interfering with and stopping the plaintiff's construction activities. No communication was received by the plaintiff from Jasch or anyone on his behalf complaining about the location of the plaintiff's surveyed line before this act of vandalism occurred.
 I
The premises were charged out of the Whitford estate on April 1, 1958, and remained in the Whitford family until the conveyance to the plaintiff. All of the defendants in this action are Whitford heirs or are married to Whitford heirs, and the property was conveyed out of the Whitford estate to the Martins and then later Harold Jasch, whose wife, the defendant Judith Jasch, is a Whitford heir. Accordingly, the descriptions in the deed, the utilization of the property in question, and the representations made to the plaintiff at the time of its purchase on June 3, 1965 are all related to premises that had been "in the family" prior to the plaintiff acquiring title. Whatever ambiguities were created in connection with the description in the original deed and subsequent deeds, finally acquired by the plaintiff as being conveyed by the defendants were therefore of their own making and cannot be charged against the plaintiff in this action. D'Addaniov. D'Addanio, 26 Conn. App. 795 (1992); Sweeney v. Landers, Fraryand Clark, 80 Conn. 575, 579 (1908). CT Page 14510
Specifically, the deed into the defendant Harold Jasch, Jr., dated November 5, 1962, recorded in Goshen Land Records, volume 40, page 435, and the deed into Jasch's predecessors, the Martins, dated April 1, 1958, recorded in Goshen Land Records, volume 40, page 234 both describe the westerly line as running "along a fence." This description of the westerly line containing a fixed monument would prevail over any distances contained in the deed. Frank Towers Corporation v. Laviana, 140 Conn. 45, 50
(1953).
The premises as utilized by the defendant Harold Jasch, Jr. prior to his conveyance to the plaintiff in 1965, were presented by Jasch to the plaintiff's president and the Motor Vehicle Department as being bounded westerly by a stonewall. Francis Kaczmarczyk testified that at the time of the purchase by the plaintiff that the sellers, Jasch and Leoni, walked the boundary lines with Kaczmarczyk including the westerly line, and walked the line along the stonewall and barbed wire fence which was along the same line as the stonewall, which was the same stonewall shown in Jasch's submissions to the Department of Motor Vehicles for his junk dealer's license. These explanations of the location of the line indicate where the boundary line in the plaintiff's deed (Goshen Land Records, volume 40, page 529) on the west in fact was intended. LaVoie v. Marshall, 141 Conn. 681,686 (1954).
Finally, the defendant Brian Martin, who prepared a survey map of the premises in question along the westerly line showing the boundary line along the fence and wall in exactly the same location as that shown on the Sterling map can be construed as an admission by the defendants that the location of the line by deed is in fact exactly where Martin shows it to be, which is in exactly the same location as is shown on the Sterling map.
For the foregoing reasons, the court finds that with respect to the westerly line, the plaintiff owns the premises up to the stonewall and ancient barbed wire fence line by deed.
 II
The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of possession and kept out uninterruptedly for a period of 15 years by an open, visible, and exclusive possession by the CT Page 14511 claimant without the license or consent of the owner and under a claim of right. Wadsworth Realty Co. v. Sunberg, 165 Conn. 457; Conn. Gen. Stat. § 52-575. Adverse possession by successive owners may be tacked on to create the 15 year prescriptive period. Smith v. Chapin, 31 Conn. 530 (1863). Incidental presence on premises claimed by adverse possession without such presence being for purposes of claiming title will not preclude a finding of adverse possession. Lucas v. Crofoot, 95 Conn. 619 (1921). The claimant's possession need not be absolutely exclusive if it is the type of possession which would characterize an owner's use.Roche v. Fairfield, 186 Conn. 490, 502 (1982). Adverse possession must be made up by clear and positive proof. Schulz v.Syvertsen, 219 Conn. 81 (1991). The requirement that an adverse possession be "notorious" means that the use of the claimant constitutes something that is commonly known; well known.Robinson v. Meyers, 156 Conn. 510 (1968).
If there is anything in the law that would serve as a text book example as to what is "notorious", "open", and "adverse" within the meaning of the above cases, it is a junk yard with hundreds of scrapped autos, auto parts, and related materials enclosed by a fence which the persons against adverse possession are attempting to extinguish. Indeed the activities of the defendants in this action have been focused on the plaintiff's facility virtually since it was purchased. The complaint to the Motor Vehicle Department in 1973 with reference to the fencing of the plaintiff's premises was from one of the defendants. Cars have been essentially in the location presently occupied by the plaintiff's facility for almost 40 years. There have been no changes in the plaintiff's northerly or easterly boundary for almost 40 years. The use of the premises northerly and easterly boundary has been known to and in fact participated in by some of the defendants for almost 40 years. The previous owners of the junk yard facility itself were or are related to the defendants in this case. Accordingly, there is clear evidence of adverse possession with reference to the northerly and easterly lines of the subject premises.
Further, no survey was done at the time of the plaintiff's acquisition of the property in question and presumably prior thereto. The plaintiff's president was in fact shown the boundaries by the seller, Jasch and Leoni, who walked the boundaries with Kaczmarczyk. Except for the northeasterly corner, which was less cluttered with salvaged vehicles than the remaining portions of the plaintiff's property, the entire CT Page 14512 premises deeded to the plaintiff were occupied by salvaged vehicles, vehicle parts, etc. It was obvious to all in the vicinity where the boundaries were. Further, when in 1973, the defendants were dissatisfied with the state of the fencing of the plaintiff's property, they filed a complaint with the Department of Motor Vehicles, pursuant to which the plaintiff re-erected his fencing around the salvaged vehicles, fencing the north and easterly boundary. There is no claim by the defendants to any use whatsoever of any of the premises in question inconsistent with the plaintiff's claim of adverse possession. Accordingly, the plaintiff's claim of title to the premises in question by adverse possession is found in its favor.
 III
The plaintiff claims that the defendant Brian Martin is liable to it for damages for an intentional trespass to their real estate which occurred on September 11, 1994 at which time Martin travelled onto the plaintiff's premises with a backhoe and ripped down 300 feet of fencing causing approximately $2,500.00 worth of damages to the plaintiff.
One is subject to liability to another for trespass to real property irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally enters land in the possession of the other or causes a thing or third person to do so, and remains on the land or fails to remove from the land a thing he has a duty to remove. 75 Am.Jur.2d 29, Trespass § 27.
In order to maintain an action for trespass and injunctive relief, the plaintiffs must establish that they have title to the premises in question and are in possession thereof. McCullough v.Waterfront Park Association, Inc., 32 Conn. App. 746, 749 (1993).
The court finds that the plaintiff is in possession of and is the owner of the real estate in question and that Brian Martin went on the land on September 11, 1994, and tore down the plaintiff's fence. The defendant Martin is liable to the plaintiff for such damages found to have been proven in the amount of $3,500.00. The intention required to make the actor liable for trespass is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. 75 Am.Jur.2d 30, Trespass § 29. CT Page 14513
 IV
The court awards exemplary damages against the defendant Martin which are measured by the plaintiff's attorney's fees less taxable costs. In Connecticut a plaintiff may recover exemplary damages where the pleadings allege and the evidence shows wanton or wilful malicious misconduct, i.e. conduct inflicted intentionally without just cause or excuse. Markey v. Santangelo,195 Conn. 76, 77 (1985). If the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights, an actual intention to do harm to the plaintiff is not necessary. Berry v. Loiseau, 223 Conn. 786, 811
(1992). The measure of damages where exemplary damages are awarded by the court are the litigation expenses less taxable costs. Berry v. Loiseau, supra, 825-827.
In this case, during 1994 and 1995, the plaintiff was in the process of attempting to comply with the rules and regulations of various regulatory bodies including the DEP, the Torrington Area Health District, the Department of Motor Vehicles, and the Town of Goshen. One of the requirements being imposed upon the plaintiff in this connection was the erection of a fence around its facility. Indeed, it had been at the insistance [insistence] of the defendants in this matter that the plaintiff had been contacted by various authorities to erect a fence around its premises. The plaintiff attempted to procure the services of a surveyor, survey its line and commence the erection of a fence both in the fall of 1994 and the spring of 1995. The defendants Martin never attempted to contact the plaintiff regarding the lcoation [location] of the line, never attempted to retain counsel or otherwise raise the issue of the location of the westerly line in an orderly way, but resorted to vandalism and self-help measures to destroy the fence that the plaintiff was in the process of erecting. This conduct amounts to reckless, malicious and wilful actions by the defendant which entitle the plaintiff in this action to exemplary and punitive damages in the amount of $1,000.00.
 V
The court finds that with respect to the westerly line based on both the Sterling and Martin surveys, the plaintiff owns by deed the property up to the stonewall shown on both surveys, which is also the line of an old wire fence, and which line has been recognized by the parties and their predecessors in title CT Page 14514 since 1958. The court finds that pursuant to the language of the deed and specifically the monument set forth therein, i.e. the fence and stonewall, that the plaintiff owns up to that line by deed. With reference to the northerly and easterly lines, the property in question has been occupied by the plaintiff and its predecessors in title since approximately 1958 in one of the most notorious type uses known to man, i.e., junked vehicles, scrap metal, and related materials. The use and occupation of the land by the plaintiff is open, adverse and notorious. Judgment may enter in favor of the plaintiff on the counterclaim.
Finally, the vandalism and wanton destruction committed by the defendant Martin gives rise to an award of damages against him for trespass and an award of damages against them for exemplary damages measured by the plaintiff's cost of litigation less taxable costs in the amount of $1,000.00. The decree enters pursuant to section 47-31 of the Connecticut General Statutes quieting and settling title on the plaintiff to the property described on the Sterling survey and an injunction enters against all defendant from entering upon said premises or directly or indirectly interfering with the plaintiff's use thereof, subject to penalty in accordance with the law.
Judgment may enter accordingly together with costs.
PICKETT, J.