[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR TEMPORARY INJUNCTIONAS TO WINTER STORAGE
The plaintiff is a public utility whose operations include the generation of electricity. As part of that operation, it created a man-made lake known as Candlewood Lake, which in part is located in the town of Brookfield, Connecticut. The defendants own property abutting the so-called "440 line" on Lake Candlewood in Brookfield and presently do business on their property as CT Page 3222 "Candlewood East Beach and Sailing Club." The property to the west of said "440 line" is owned by the plaintiff, but said area is burdened by certain rights that were deeded to the defendants' predecessors in title and those relevant to the issues in this case will be discussed later in this memorandum.
The defendants purchased most of their property in 1983, and subsequently purchased a smaller parcel contiguous to that property in 1988. After the 1983 purchase, the defendants intensified their use of the area to the west of the "440 line" by doubling the length of floating docks in said area to now accommodate two hundred (200) boats. In addition, annually during the months of November through March, the defendants store these floating docks on plaintiff's land upon a seawall and, in addition, store boats belonging to others for a fee upon plaintiff's land to the east of said seawall.
The plaintiff claims that these winter storage activities by the defendants are not permitted uses of plaintiff's land under the terms of the rights deeded to the defendants or their predecessors in title. The plaintiff, therefore, seeks a temporary injunction commanding the defendants to cease and desist their winter storage activities on plaintiff's property.
The defendants claim that their winter activities are within the deeded rights they enjoy in plaintiff's land.
The relevant provisions of the deed from the Rocky River Realty Company to the defendants' predecessors in title are the following:
 Together with the right to use, for the sole purpose of gaining access to the waters of Lake Candlewood, so-called, so much of the land lying below said 440-foot contour elevation line as abuts said contour line where it forms a boundary of the premises herein conveyed and is included within the limits hereinafter described. . . . [Emphasis added.]
 Together also with the right and privilege of constructing and maintaining docks of simple construction on the shore of said lake within said limits, on condition that no such docks are built and maintained at a greater elevation or of a greater length than will be reasonable for use when CT Page 3223 the waters of said lake are at or near high water elevation, as the same may be from time to time. . . .
 Nothing in this instrument shall be construed, however, as an intent to grant the right or privilege to build or maintain below said 440-foot contour elevation line, any structures other than docks and protective construction, as above provided, except that structures may be maintained on floats in the waters of said lake in front of the shore of the premises herein described and within a reasonable distance therefrom and within the limits hereinafter described, and provided that said structures are used only for sheltering boats and for bathing purposes, but for no other purpose. . . . [Emphasis added.]
The question before the court is whether the storage below the "440 line" of boats and the storage on dry land of docks that during the boating season are floating on Lake Candlewood is part of the easement granted by the above quoted easement language.
"The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . This is not to overlook, however, that [t]he owner of an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more." (Citations omitted; internal quotation marks omitted.) Kuras v.Kope, 205 Conn. 332, 341-42, 533 A.2d 1202 (1987).
The language of the easement does not specifically provide for dry land storage of boats or docks on the servient estate. Thus, the issue is whether such storage is incident or necessary to their proper enjoyment of the easement to gain access to the waters of Lake Candlewood, and to construct and maintain docks on the shore of the lake, or to have structures on floats in the waters of the lake.
It is clear that the dry land storage of boats on the servient tenement is not included as part of the easement.Ezikovich v. Linden, 30 Conn. App. 1, 7; and the Michigan case cited therein.
"The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant CT Page 3224 provisions and reading it in the light of the surrounding circumstances . . . and its interpretation present[s] a question of law. . . . Taylor v. Dennehy, 136 Conn. 398, 402, 71 A.2d 596
(1950). . . . Kelly v. Ivler, 187 Conn. 31, 39, 450 A.2d 817
(1982)." (Internal quotation marks omitted.) Lago v. Guerrette,219 Conn. 262, 268.
The language of the easement has a clear expression of intent. The defendants have a right to pass over the servient tenement to reach the waters of the lake, to construct and maintain docks on the shore of the lake and to maintain structures on floats in the waters of the lake. The court does not find that winter storage of docks on the upland away from the shore and waters of the lake is incident or necessary to the proper enjoyment of these easements.
The defendants have also raised defenses to plaintiff's claims based on laches and the statute of limitations for actions brought to enforce private restrictions recorded on the land records. Section 52-575a of the General Statutes.
The court is of the opinion that these defenses are not applicable to the issues raised concerning winter storage of boats and docks. "The defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit." Schomer v. Shilepsky, 169 Conn. 186, 194. The defendants were aware of the proprietary interest of the plaintiff in the subject area. See, for example, Exhibit 95 that refers to defendants' claim of a ninety-nine (99) year lease. There was also testimony by Robert E. Head that there have been ongoing discussions with the defendants since 1985, by plaintiff's representatives concerning the defendants' activities on plaintiff's land below the "440 line." The court is unable to find inexcusable delay in bringing suit after reasonable efforts to negotiate an agreement concerning claimed overburdening of plaintiff's land.
The provisions of § 52-575a limiting the bringing of an action to enforce a private restriction recorded in the land records is inapposite to the issues in this case. The language of the easements relevant to the issues before the court are not private restrictions on defendants' land, but are grants of easements on plaintiff's land. To label the action of the plaintiff in seeking a temporary injunction for the prohibition of winter storage on its land because it exceeds the scope of the CT Page 3225 easements granted as an action to enforce a private restriction is not appropriate. The only language that may suggest a private restriction is that stating:
 This conveyance is given by the Grantor and accepted by the Grantees on the condition that the use of any land and the exercise of any rights herein conveyed, shall not in any way or at any time interfere with any use to which The Connecticut Light and Power Company may put the waters of said lake, or the premises below the said 440-foot contour elevation line, including flooding or draining the same, or with anything that it may do thereon.
The complaint of the plaintiff does not allege a violation of this restriction, but relies on its claim of an overburdening of the aforementioned easements and, therefore, the limitation claimed by the defendants is inapplicable. What the defendants seem to say is that upon granting an easement, there is an implied private restriction on the land records that any expansion of the use of the easement beyond the scope of its provisions is forbidden and, thus, a private restriction covered by the statute. The court disagrees.
For the foregoing reasons, the temporary injunction previously ordered on February 21, 1997, was granted.
Stodolink, J.